The PLAN COMMISSION OF HARRI-SON COUNTY, Indiana, Its members, J.R. Eckart, Chairperson, J.R. Eckart, Gerald Dryden, Jim Klinstiver, Steve Haggard, Carl Mathes, Angela Beavers and Victor McCauley, and each of the following individually, J.R. Eckart, Gerald Dryden, Jim Klinstiver, Steve Haggard, and Carl Mathes, Appellants–Respondents,

v.

Steve AULBACH, Gordon Board and Leroy Humphrey, Appellees–Petitioners.

No. 31A01–0008–CV–271.

Court of Appeals of Indiana.

May 23, 2001.

Rehearing Denied June 23, 2001.

Leslie C. Shively, Fine & Hatfield, Evansville, Indiana, Attorney for Appellants.

John A. Kraft, Young, Lind, Endres & Kraft, New Albany, Indiana, Attorney for Appellees.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Respondents, The Plan Commission of Harrison County, Indiana, its members, J.R. Eckart, Chairperson, J.R. Eckart, Gerald Dryden, Jim Klinstiver, Steve Haggard, Carl Mathes, Angela Beavers, and Victor McCauley, (hereinafter referred to collectively as "Plan Commission"), and each of the following individually, J.R. Eckart, Gerald Dryden, Jim Klinstiver, Steve Haggard, and Carl Mathes, appeal the trial court's determination pursuant to a Writ of Certiorari for Judicial Review filed by Appellees–Petitioners, Steve Aulbach, Gordon Board, and Leroy Humphrey (hereinafter referred to collectively as "Developers"), appealing the imposition of certain conditions on the granting of preliminary approval of a subdivision plat known as "Franklin Hills" by the Harrison County Plan Commission. The trial court concluded that the Plan Commission was required to grant preliminary approval of the subdivision because the subdivision conformed in all respects to the concrete standards concerning the application for a preliminary permit in Harrison County.

We affirm.

### ISSUE

On appeal, the Plan Commission raises four issues for our review, which we consolidate and restate as: whether the trial court improperly concluded that the Plan Commission failed to timely act upon the Developers' plat application when the Developers met all the preliminary recommendations of the Commissions Planner, and also that the Plan Commission imposed certain conditions not in compliance with the concrete standards of the Harrison County Subdivision Control Ordinance.

### FACTS AND PROCEDURAL HISTORY

Because the trial court provided a detailed account of the facts and procedural history in this case, we adopt and incorporate much of the trial court's findings of fact in our opinion.

The Developers are the owners of certain parcels of real estate totaling 124.34 acres in Franklin Township, located in Harrison County, Indiana. On September 11, 1998, the Developers applied for approval of a major subdivision, known as "Franklin Hills," to the Harrison County Plan Commission, by submitting a sketch plan with the legal description.

On October 28, 1998, Eric Wise (Wise), acting in his official capacity as Planner for the Plan Commission, forwarded a memorandum to the Plan Commission, recommending approval of the plat provided that the following occur:

1. Evidence is submitted that insures adequate water service will be provided,

2. The applicant adequately addresses the problems with the steep slopes and drainage that effect lots and streets,

3. The applicant agrees to provide a connector with Georges Hill Road.

Should these three issues be addressed it is recommended approval of the plat be subject to the following conditions:

1. Sinkhole easements be added,

2. Agricultural easements are added adjacent to all surrounding agricultural land,

3. Dimensions of all lots and curves be shown,

4. Construction plans for entire plat being approved,

5. Elimination of lot 30 which is required to connect new streets with Georges Hill road,

6. Dedication of right of way along Georges Hill Road.

(R. 274–275).

The Developers' application was scheduled for November 5, 1998, to be voted upon by the Plan Commission, but the meeting was tabled because the Developers were not present. The application was rescheduled for public hearing on December 3, 1998, when the Plan Commission heard the request. The Developers appeared at this hearing, requesting preliminary approval of the "Franklin Hills" subdivision comprised of 86 lots, with a revised plat description to address the issues raised by the Planner in the October 28, 1998 memorandum. After discussion concerning only one means of access to the Preliminary Plat, the Plan Commission directed for the plat to be revised to provide for two means of ingress and egress. On December 3, 1998, the Plan Commission members, after two motions failed for lack of official action, voted five to two to table the Developers' request until the Plan Commission meeting scheduled for January, 1999. Subsequent to the meeting on December 3, 1998, the Developers revised their Preliminary Plat to provide for two means of ingress and egress to "Franklin Hills." As a result, the number of proposed lots was reduced from 86 to 78.

On February 4, 1999, the Developers again appeared before the Plan Commission and presented a revised Preliminary Plat for "Franklin Hills," conforming to the standards and requirements of the Subdivision Control Ordinance of Harrison County, Indiana. At the February 4, 1999 meeting, Angela Beavers made a motion to deny the plat, and Jim Klinstiver seconded the motion. Thus, the Plan Commission voted to deny the Preliminary Plat on grounds that the Preliminary Plat was inconsistent with the Comprehensive Plan of Harrison County, Indiana. However, the motion to deny the Preliminary Plat failed on a vote of four to one, and therefore, the Plan Commission failed to take official action at this meeting. Following the failure of the motion to deny the Preliminary Plat, the Plan Commission again tabled the request until the April 1999 meeting. However, the Developers were not allowed to appear at the next scheduled meeting in March 1999.

In a memorandum dated March 23, 1999, the Planner stated:

Since this Docket has been under consideration for more than six (6) months there is absolutely no justification for the Commission not to make a decision whether to approve or deny this request at the next meeting. With this in mind, each member should draft findings of fact for this request prior to the meeting so that this Docket can be decided in an expedited manner.

(R. 276).

Prior to the Plan Commission's regular meeting on April 1, 1999, including the public hearing concerning "Franklin Hills," Bob Lawson of the Norfolk Southern Railway addressed the Plan Commission about railroad crossing safety concerns and procedures. It is undisputed that Bob Lawson's appearance at the April 1, 1999 meeting was arranged by Chairperson J.R. Eckart, and that prior to the meeting, communications occurred between Bob Lawson and Plan Commission members. Moreover, Bob Lawson's statements were negative, detrimental and highly prejudicial against the Developers.

After the Developers presented their revised Preliminary Plat, the Plan Commission heard opposition to approval, at which time a Plan Commission member presented photographic slides and a narrative in opposition to the Preliminary Plat. The Developers objected to the bias of the Plan Commission member. At this meeting, a Plan Commission member recused himself from voting on the Preliminary Plat due to a request of the Developers' counsel that the record of the Plan Commission reflected that he and another member improperly communicated with Bob Lawson of the Norfolk–Southern Railroad, prior to the scheduled meeting. . The effect of the recusal of this member left five members to vote on the Preliminary Plat, and any official action by the Plan Commission requires five votes to carry a motion. A motion to deny the Preliminary Plat was made and seconded, but the motion failed to achieve the requisite five votes, therefore, the action taken by the Plan Commission was not an official act. A member moved to approve the Preliminary Plat for "Franklin Hills" and presented a finding that the Developers had met the requirements of the Subdivision Control ordinance of Harrison County, Indiana. The motion failed for lack of a second. Another motion was made by a member, and seconded, to again table the request until the next Plan Commission meeting when hopefully a sufficient number of members would be present. That motion also failed to achieve the requisite five votes to constitute an official action. The Chairperson then apologized to the Developers for the Commission members' ex parte communication with the representative of the Norfolk Southern Railroad prior to the public hearing, thereby disallowing the Developers from participating in those discussions.

Over the objection of the Developers, the members voted five to zero to continue discussion of the Preliminary Plat at the next meeting set for May 1999. The Plan Commission members then voted five to zero to end the public hearing portion of the April 1, 1999 docket.

On April 7, 1999, the Developers filed a Verified Petition for Writ of Mandamus (Mandate) and Complaint for Damages, requesting for the trial court to mandate the Plan Commission to carry out their duties as required by law. On May 6, 1999, the Developers again appeared before the Plan Commission for the Plan Commission to vote on "Franklin Hills." Without discussion, and upon a motion by a Plan Commission member, the matter was tabled and rescheduled for a special meeting on May 26, 1999. At the special meeting on May 26, 1999, a motion was made to approve the Developers' Preliminary Plat "subject to conditions being written by Plan Commission attorney." (R. 279). The motion was seconded and passed with a vote of five to two. On June 3, 1999, the Developers' subdivision request was approved.

On June 25, 1999, the Developers filed an Amended Verified Petition for Writ of Mandamus, Complaint for Damages and Petition for Writ of Certiorari to review the decision of the Harrison County Plan Commission.

The record of proceedings for the Plan Commission was submitted to the trial court on May 11, 2000. Thereafter, the Plan Commission filed its Proposed Findings of Fact and Conclusions of Law on June 5, 2000, and the Developers filed their Proposed Findings of Fact and Conclusions of Law on June 7, 2000. On July 5, 2000, the trial court entered its Findings of Fact, Conclusions of Law and Judgment, stating in pertinent part as follows:

\* \* \* \* \* \*

43. The Findings of Fact adopted by the HCPC [Plan Commission] in-

corporated certain conditions that had been previously addressed by the Petitioners/Plaintiffs [Developers] some months earlier, contained conditions that allowed the members of HCPC to exercise discretion in the approval process, added certain conditions that had not been previously raised during the ten (10) months this application was under consideration, and contained certain conditions which the Petitioners consider to be beyond and outside the scope of the concrete standards set out in the Subdivision Control Ordinance of Harrison County, Indiana (Ordinance 1995–6).

44. The Petitioners/Plaintiffs cooperated with the HCPC and met the requirements of the Subdivision Control Ordinance as they understood them. Their cooperation and compliance is a matter of record is so reflected by the memoranda of the HCPC Planner, who early on, informed the Commission that the Plaintiff/Petitioners were in substantial compliance.

45. That Harrison County Plan Commission is governed by the Harrison County Zoning Ordinance and the Subdivision Control Ordinance (Ordinance No. 1995–6).

46. The Harrison County Subdivision Ordinance provides certain concrete standards for the approval of a major subdivision such as that of the Petitioners/Plaintiffs.

47. The Petitioners/Plaintiffs are aggrieved persons as a result of the Plan Commission Members failure to timely act upon their application and to either approve or reasonably reject the plat of the subdivision known as Franklin Hills. The HCPC imposed certain conditions that are not in accord with the Harrison County Subdivision Control Ordinance.

\* \* \* \* \* \*

50. The Plaintiffs/Petitioners submitted all required checkpoint items and met all the preliminary recommendations of the Commissions Planner.

\* \* \* \* \* \*

At subsequent meetings there were procedural delays, parliamentary maneuvering and vocal opposition to the plat by a public remonstrance and at least one Commission member. Those in opposition presented no legal arguments for their opposition to the development. The Petitioners were given no actual means to address their concerns nor did the opponents allow the developers any opportunity to remedy whatever default there may have been.

The HCPC by one artifice or another, for some reason, or at time [sic] for no reason at all, delayed taking action on the Petitioners request until June 3, 1999, some nine (9) months after their Planners memorandum.

\* \* \* \* \* \*

These conditions were set as a pre-requisite for secondary approval. The developer is prohibited from moving forward with the project until these eight (8) concerns are addressed. However, secondary approval is not the matter the Commission was responsible for at that time. Mandating remedial action or setting conditions for secondary approval prior to granting the initial acceptance of the Preliminary Plat or granting initial approval, is not acceptable practice or procedure.

(R. 279–280, 283–284). The Plan Commission now appeals.

## DISCUSSION AND DECISION
### Standard of Review

■ At the outset, we note that both parties, pursuant to Ind.Trial Rule 52, submitted proposed findings of fact and conclusions of law, requesting for the trial court to render its decision pursuant to its own findings of fact and conclusions of law. Thus, before addressing the merits of this appeal, we note our standard of review. We initially observe that Ind. Trial Rule 52(A) provides that "[o]n appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Moreover, when a trial court has entered specific findings of fact and conclusions of law along with its judgment pursuant to Ind. Trial Rule 52, our standard of review is two-tiered. *Metropolitan Development Com'n of Marion County v. Schroeder*, 727 N.E.2d 742, 748 (Ind.Ct.App.2000), *trans. denied.*

■ First, we consider whether the evidence supports the findings, construing the findings liberally in support of the judgment. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Next, we determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it, and we will disturb the judgment only when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* In applying this standard, we neither re-weigh the evidence nor judge the credibility of the witnesses. *Wagner v. Estate of Fox,* 717 N.E.2d 195, 200 (Ind.Ct.App. 1999). Rather, we consider the evidence that supports the judgment and the rea-sonable inferences to be drawn therefrom. *Id.*

In the case at hand, on June 5, 2000, the Developers submitted their proposed findings of fact and conclusions of law to the trial court with respect to their prior submission seeking primary approval of a subdivision plat. In *Yater v. Hancock County Planning Com'n,* 614 N.E.2d 568, 570 (Ind.Ct.App.1993), *reh'g denied, trans. denied, cert. denied,* this Court explained the standard of review when a developer sought primary approval of a subdivision plat:

A reviewing court may vacate a board or commission's decision only if the evidence, when viewed as a whole, demonstrates that the conclusions reached by it are clearly erroneous. *Town of Beverly Shores v. Bagnall,* 590 N.E.2d 1059, 1061 (Ind.1992). Such a standard naturally requires great deference toward the administrative board by the reviewing court when the petition challenges findings of fact or the application of the facts to the law. *Id.* However, if the allegation is that the commission committed an error of law, no such deference is afforded and reversal by the trial court is appropriate if error of law is demonstrated. *Id.*

In reviewing the decision of a zoning board or commission, this court is bound by the same standard as the trial court. *Van Scoik v. Kosciusko County Board of Zoning Appeals,* 598 N.E.2d 594, 595 (Ind.Ct.App.1992), *trans. denied.* There is a presumption that determinations of a zoning board, as an administrative agency with expertise in the area of zoning problems, are correct and should not be overturned unless they are arbitrary, capricious, or an abuse of discretion. *Id.* Thus, a reviewing court does not conduct a trial de novo, even though evidence may have been taken to supple-

ment the writ of certiorari and return, Ind.Code § 36–7–4–1009, 1016, and may not substitute its decision for that of the board. *Scoik*, 598 N.E.2d at 595. If the commission's decision is correct on any of the grounds stated for disapproval, its decision should be sustained. *Bagnall*, 590 N.E.2d 1059, 1062.

However, the decision appealed by the Developers in this proceeding is from the Harrison County Plan Commission rather than the Harrison County Board of Zoning Appeals, therefore, Ind.Code § 36–7–4–1016 is the statute providing for review by certiorari of a plan commission's decision. Specifically, that statute provides as follows:

The following decisions of the plan commission may be reviewed by certiorari procedure in the same manner as that provided for the appeal of a decision of the board of zoning appeals:

(1) A final decision under the 700 series of this chapter (subdivision control).

Ind.Code § 36–7–4–1016.

Moreover, Ind.Code § 36–7–4–1003 provides in relevant part, the remedy for review by certiorari of decisions of the board of zoning appeals or the legislative body, stating that, "[e]ach person aggrieved by a decision ... may present, to the circuit or superior court of the county in which the premises affected are located, a verified petition setting forth that the decision is illegal in whole or in part and specifying the grounds of the illegality." Finally, with respect to a trial court's review by writ of certiorari, Ind.Code § 36–7–4–1009 provides the evidentiary guidelines for trial courts to follow in such matters:

The court may determine the sufficiency of the statements of illegality contained in the petition, without further pleadings, and may make its determination and render its judgment with reference to the legality of the decision of the board of zoning appeals, on the facts set out in the return to the writ of certiorari. If the court determines that testimony is necessary for the proper disposition of the matter, it may take evidence to supplement the evidence and facts disclosed by the return to the writ of certiorari, but the review may not be by trial de novo. In passing on the legality of the decision of the board, the court may reverse, affirm, or modify the decision of the board brought up for review.

■ First, the Plan Commission argues that the trial court exceeded its jurisdiction by reversing the decision of the Plan Commission. Specifically, the Plan Commission contends that the sole issue presented to the trial court in the Developers' Writ was the legality of the Plan Commission's imposition of certain conditions when it granted preliminary approval of the plat, and that in reversing the Plan Commission's decision, the trial court erroneously substituted its judgment for that of the Plan Commission, reweighed the evidence, and went beyond the scope of the issues presented. Essentially, the Plan Commission claims that certain of the trial court's findings of fact and conclusions of law do not pertain to the legal issues presented in the Developers' Writ, and therefore, reflects a de novo review by the trial court. We disagree.

In pertinent part, the Developers' Petition for Writ of Certiorari provides as follows:

6. The approval of Franklin Hills Subdivision with conditions outside of the Subdivision Control Ordinance is arbitrary, capricious, unjust and in bad faith as the conditions are outside the concrete standards as imposed by the Harrison County Subdivision Control Ordinance ...

\* \* \* \* \* \*

23. That the decision of the Plan Commission of Harrison County, Indiana is wholly illegal, arbitrary, capricious and unjust as the decision is not supported by the evidence of probative value or is against the weight of the evidence; the developers satisfied all the requirements of the Subdivision Control Ordinance and approval by the Harrison County Plan Commission without conditions is mandatory in accordance with Indiana Code 36–7–4–702 . . .

(R. 103). Although the Developers' Petition did focus upon the illegality of the Plan Commission's imposition of certain conditions when approving the Developers' Preliminary Plat, their Petition also raised the legal issue that the Plan Commission's decision was *wholly* illegal, arbitrary, capricious and unjust. Thus, when determining the sufficiency of the statements of illegality contained in the Developers' Petition for Writ of Certiorari pursuant to Ind.Code § 36–7–4–1009, the trial court was to analyze the Plan Commission's decision as a whole for illegality. In fact, the trial court's finding of fact number 42 specifically stated that, "[t]he findings of fact adopted by the HCPC are incorporated herein by reference." (R. 279). Therefore, we find that the trial court did not exceed its scope of review by performing a de novo review of the Plan Commission's decision. Rather, the trial court determined the sufficiency of the statements of illegality contained in the Developers' Petition by reviewing the legality of the entire approval procedure as a whole.

■ The Plan Commission next argues that the trial court erroneously concluded that it improperly delayed approval of the Developers' Preliminary Plat. Specifically, the Plan Commission contends that, "the first point in time in which the Developer may have presented a plat which sufficiently met all of the legitimate concerns would have been in February of 1999, three and a half months prior to the granting of preliminary approval of the plat by the Plan Commission." (Appellant's Brief at 22). However, the Plan Commission fails to differentiate between its responsibility to review and either deny or approve subdivision plat requests when the request satisfies the requirements of the subdivision control ordinance, and its unreasonable delay in rendering a decision by continually requiring the Developers to satisfy new items not previously discussed, and thereby tabling the Developers' request.

With respect to subdivision control, Ind. Code § 36–7–4–700 *et seq.* provides the mechanism for the planning commission to review and either deny or approve subdivision plat requests. Specifically, Ind.Code § 36–7–4–701 provides for the requirement of a subdivision control ordinance:

(a) The legislative body shall, in the zoning ordinance adopted under the 600 series of this chapter, determine the zoning districts in which subdivision of land may occur.

(b) The plan commission shall then recommend to each participating legislative body an ordinance containing provisions for subdivision control, which ordinance shall be adopted, amended, or repealed in the same manner as the zoning ordinance.

In this case, the Harrison County Subdivision Control Ordinance provides in relevant part as follows:

**SECTION III: APPLICATION AND APPROVAL PROCEDURES**

**3.3 Major Subdivisions**

 **3. Sketch Plan Review Process**

 **d. Primary Approval of the Preliminary Plat.** After the Commission has held a hearing upon the prelimi-

nary plat, the Administrators report, checkpoint recommendations, and exhibits submitted at the public hearing, the applicant shall be advised of any required changes and/or additions. The Commission shall at a public meeting, grant primary approval, or disapprove the preliminary plat.... Primary approval by the Commission is subject to review by certiorari.

\* \* \* \* \* \*

## SECTION IV: REQUIREMENTS FOR IMPROVEMENTS AND DESIGN

### 4.2 LOT IMPROVEMENTS

**4. Character of the Land.** Land which the Commission finds to be unsuitable for subdivision or development because of flooding, improper drainage, steep slopes (15 % or greater), rock formations or topography, or other features which might reasonably be harmful to the safety, health, and general welfare of the present or future inhabitants of the subdivision and/or its surrounding areas, shall not be subdivided or developed unless adequate methods are formulated by the developer and approved by the Commission to solve the problems created by the unsuitable land conditions. Such land shall be set aside for such permitted uses by the Zoning Ordinance as shall not involve any danger.

(Supp. R. 23, 28–29).[1]

Moreover, Ind.Code § 36–7–4–702 provides requirements for primary approval of a plat, and standards of the ordinance for subdivision control:

(a) In determining whether to grant primary approval of a plat, the plan commission shall determine if the plat or subdivision qualifies for primary approval under the standards prescribed by the subdivision control ordinance.

(b) The subdivision control ordinance must specify the standards by which the commission determines whether a plat qualifies for primary approval. The ordinance must include standards for:

(1) minimum width, depth, and area of lots in the subdivision;

(2) public way widths, grades, curves, and the coordination of subdivision public ways with current and planned public ways; and

(3) the extension of water, sewer, and other municipal services.

The ordinance may also include standards for the allocation of areas to be used as public ways, parks, schools, public and semipublic buildings, homes, businesses, and utilities, any other standards related to the purposes of this chapter.

(c) The standards fixed in the subdivision control ordinance under subsection

(b) may not be lower than the minimum standards prescribed in the zoning ordinance for a similar use.

(d) As a condition of primary approval of a plat, the commission may specify:

(1) the manner in which public ways shall be laid out, graded, and improved;

(2) a provision for water, sewage, and other utility services;

(3) a provision for lot size, number, and location;

(4) a provision for drainage design; and

(5) a provision for other services as specified in the subdivision control ordinance.

---

**1.** A supplemental record was filed in this case, which contained among other documents, a Certified Copy of the Harrison County Subdivision Control Ordinance.

Therefore, pursuant to the Harrison County Subdivision Control Ordinance and the applicable statutes, it was the Plan Commission's duty, at the first reasonable opportunity to furnish the Developers with all of the specific and concrete reasons for disapproval so that the Developers could amend their plat to comply with the applicable ordinances. *See Tippecanoe County Area Plan Commission v. Sheffield Developers, Inc.,* 181 Ind. App. 586, 394 N.E.2d 176, 185, n. 13 (1979). The Plan Commission's only role when reviewing plat applications is to determine whether a plat presented to them comports with the requirements of the Harrison County Subdivision Control Ordinance. *See Hickory Hills Development Co., L.L.C. v. Coffman,* 699 N.E.2d 1214, 1216 (Ind.Ct. App.1998), *trans. denied.* If, after a hearing, the Plan Commission determines that the application and plat comply with the standards set forth in the subdivision control ordinance, it shall make written findings and grant primary approval for the plat. Ind.Code § 36–7–4–707; *Brant v. Custom Design Constructors Corp.,* 677 N.E.2d 92, 96 (Ind.Ct.App.1997). Accordingly, approval of a plat that meets the requirements of the applicable statutes and ordinances constitutes a ministerial as opposed to a discretionary act. *Id.* Thus, it is a mandatory duty of the Plan Commission to approve a subdivision plat that complies with the applicable statutes and satisfies the concrete standards of the subdivision control ordinance, and the Plan Commission does not have the discretion to reject a subdivision plat once compliance is demonstrated. *Hickory Hills,* 699 N.E.2d at 1216.

In this case, the Record reveals that the Developers complied with the applicable statutes and the concrete standards of the Harrison County Subdivision Ordinance. However, the Plan Commission repeatedly failed to either approve or disapprove the plat, and instead imposed certain conditions that had not been previously addressed during the ten months the application was under consideration, which were outside the scope of the concrete standards set out in the subdivision control ordinance.

Specifically, after September 11, 1998, when the Developers applied for approval of the subdivision, the Developers appeared before the Plan Commission on four occasions, the Plan Commission tabled the Developers request on at least three occasions, the Plan Commission required the Developers to revise their request on three occasions, and the Developers did in fact revise their request on three occasions, before the Plan Commission finally approved the plat on June 3, 1999, approximately nine months later. Moreover, it is undisputed that on October 28, 1998, the Planner for the Plan Commission forwarded a memorandum to the Plan Commission, recommending approval of the plat provided that the following occur:

1. Evidence is submitted that insures adequate water service will be provided,

2. The applicant adequately addresses the problems with the steep slopes and drainage that effect lots and streets,

3. The applicant agrees to provide a connector with Georges Hill Road.

Should these three issues be addressed it is recommended approval of the plat be subject to the following conditions:

1. Sinkhole easements be added,

2. Agricultural easements are added adjacent to all surrounding agricultural land,

3. Dimensions of all lots and curves be shown,

4. Construction plans for entire plat being approved,

5. Elimination of lot 30 which is required to connect new streets with Georges Hill road,

6. Dedication of right of way along Georges Hill Road.

(R. 274–275).

However, when the Developers again appeared before the Plan Commission on December 3, 1998, with a revised plat addressing the issues raised in the Planner's memo, the Plan Commission again directed for the plat to be revised to provide for two means of ingress and egress to the subdivision. Nevertheless, when the Developers again appeared before the Plan Commission on February 4, 1999, with a revised plat to meet the Plan Commission's new concerns, the Plan Commission again failed to take official action, and again tabled the request. This unreasonable routine occurred for approximately nine months, whereby the Developers would appear before the Plan Commission with a revised plat, addressing the concerns of the Plan Commission from their previous appearance, and the Plan Commission would then table the request and require additional items to be addressed at the next meeting. However, the Record is clear that the Developers met the requirements of the applicable statutes and ordinances on December 3, 1998, when they revised their plat to address the Planner's concerns contained within his October 28, 1998 memo to the Plan Commission. Therefore we hold that the Plan Commission's continued tabling of the Developers' plat request without taking official action, and its repeated mandate for the Developers to address additional items in their plat was arbitrary, capricious, unreasonable, and an abuse of its authority. The evidence reveals that the Developers satisfied all the checkpoint lists and completed all the requested items on numerous occasions, however, each time such require-

ments were met, the Plan Commission mandated additional items to be addressed by the Developers, and again tabled the plat request. However, as previously discussed, it was the Plan Commission's duty, at the first reasonable opportunity to furnish the Developers with all of the specific and concrete reasons for disapproval so that the Developers could amend their plat to comply with the applicable ordinances. *See Tippecanoe County,* 394 N.E.2d at 185, n. 13. Moreover, it is a mandatory duty of the Plan Commission to approve a subdivision plat that complies with the applicable statutes and satisfies the concrete standards of the subdivision control ordinance, and the Plan Commission does not have the discretion to reject a subdivision plat once compliance is demonstrated. *Hickory Hills,* 699 N.E.2d at 1216. Therefore, the Plan Commission had no authority to table the Developers' plat request and mandate additional requirements after the Developers complied with the applicable statutes and satisfied the concrete standards of Harrison County Subdivision Control Ordinance on December 3, 1998.

 Finally, the Plan Commission argues that the conditions it imposed upon its approval of the Developers' Preliminary Plat request were supported by the Harrison County Subdivision Ordinance. We disagree.

When the Plan Commission finally took official action and approved the Developers' Preliminary Plat request for the subdivision, it made findings to include stipulations and conditions to which the Developers were subject to upon approval of their Preliminary Plat. Specifically, the Developers were subject to:

1. submission of a traffic study

2. evidence of fire protection

3. evidence of adequate water

4. fire hydrant availability

5. agreement between the developers and Norfolk Southern Railroad as to railroad crossings, warnings and grade work
6. agricultural use
7. agricultural buffer
8. sink hole easements

(R. 283). Although items 1–4, and 6–8 are contained within the Harrison County Subdivision Control Ordinance as requirements to be met for approval of a major subdivision plat, an agreement with a railroad organization is not. Moreover, as previously discussed, the Developers fully complied with the requirements of the Harrison County Subdivision Control Ordinance in their revised plat addressing the concerns of the Planner. Finally, the conditions mandated by the Plan Commission upon approval of the plat were prerequisites for secondary approval, which is beyond the authority of the Plan Commission when reviewing a preliminary plat. Secondary approval was not the responsibility of the Plan Commission.

The Developers' application requesting preliminary plat approval for the proposed subdivision was governed by the "Subdivision control" provisions found in Ind.Code § 36–7–4–700 *et seq.* Pursuant to this statute, the local legislative body must adopt an ordinance which regulates the subdivision of land in its zoning districts and which provides "concrete standards." Ind.Code § 36–7–4–702. The purpose of these standards is to provide protection to both developers and landowners and to give "fair warning as to what the local plan commission would consider when reviewing a preliminary plat." *Brant,* 677 N.E.2d at 96. In deciding whether to grant an application for primary plat approval under this scheme, the commission is required to "determine if the plat or subdivision qualifies for primary approval under the standards prescribed by the subdivision control ordi-

nance." *Id.*; Ind.Code § 36–7–4–702(a). Moreover, it was the Plan Commission's duty, at the first reasonable opportunity to furnish the Developers with all the specific and concrete reasons for disapproval so that the Developers could amend their plat to comply with the applicable ordinances. *See Tippecanoe County,* 394 N.E.2d at 185, n. 13.

Therefore, the Plan Commission was required to inform the Developers of the conditions that it mandated upon approval at the first reasonable opportunity to give them fair warning of the items that it would consider when reviewing the Preliminary Plat request. However, the *Plan* Commission improperly used its discretion by failing to take official action upon the Developers' Preliminary Plat request when the Developers had complied with the applicable statutes and ordinances. Accordingly, the Plan Commission was required to approve the Developers' Preliminary Plat request as a ministerial act without using discretion to impose conditions before or after the approval of the Preliminary Plat.

### CONCLUSION

Based on the foregoing, we conclude that the trial court properly chose to reverse the decision of the Harrison County Plan Commission because the Plan Commission improperly used its discretion to delay approval of the Developers' request for preliminary plat approval of *Franklin* Hills, and improperly imposed conditions upon the Developers' Preliminary Plat before and after its approval.

Affirmed.

SULLIVAN and FRIEDLANDER, JJ., concur.