FILED

Oct 23 2023, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Jenny R. Buchheit
Timothy E. Ochs
Sean T. Dewey
Ice Miller LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

David W. Westland
Matthew J. Warner
Westland & Bennett, P.C.
Hammond, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

LBL Development, LLC,

*Appellant-Petitioner,*

v.

St. John Plan Commission,
Town of St. John, Indiana,

*Appellee-Respondent*

October 23, 2023

Court of Appeals Case No.
22A-PL-2973

Appeal from the Lake Superior
Court

The Honorable Kristina C. Kantar,
Judge

Trial Court Cause No.
45D04-2007-PL-502

**Opinion by Judge Weissmann**
Judges Riley and Bradford concur.

**Weissmann, Judge.**

[1] LBL Development, Inc. (LBL), sought to develop a subdivision on land annexed by the Town of St. John (Town). LBL submitted its proposed subdivision plat to the St. John Plan Commission (Commission) for approval. Although LBL's proposed plat complied with one type of zoning, the Commission found the property had been zoned differently by the St. John Town Council (Town Council) and rejected the plat. LBL petitioned for judicial review of the Commission's decision, contending it wrongly determined the Town Council's zoning designation.

[2] The trial court affirmed the Commission's decision, and LBL appealed. Concluding that LBL misconstrues the applicable zoning ordinances, we affirm.

## Facts

[3] LBL petitioned to annex an approximate 40-acre land parcel (Property) to the Town in 2019. The Town Council approved the annexation petition by a 3-2 vote in September 2019. In late December 2019, the Town Council formalized the annexation through Ordinance #1693 (Annexation Ordinance), which also was passed by split vote. But neither the Annexation Ordinance nor the annexation took effect until January 1, 2020. The Annexation Ordinance provided in relevant part:

> That the zoning district classification of [the Property] is hereby determined to be RC-2 PUD Zoning District and the master zoning map is hereby amended to reflect this zoning classification.

App. Vol. II, p. 67.

[4] Ten years before its enactment of the Annexation Ordinance, the Town Council had enacted Ordinance § 24-42 (Unanimous Vote Ordinance), which provided:

> All land shall be annexed to the Town with an R-1 residential single-family zoning designation unless the Town Council unanimously assigns the annexed land to a different zoning district at the time of the annexation.

*Id.* at 12 (cleaned up). The Unanimous Vote Ordinance has remained in effect continuously since 2009.

[5] On December 31, 2019—one day before the Property's annexation to the Town took effect—LBL filed with the Commission an application for approval of its proposed plat for the Property. LBL's petition described the Property's zoning as RC-2 PUD. The next day the Town Council passed Resolution 2020-01-01, which provided in relevant part:

> WHEREAS, the Town Council of St. John, Lake County, Indiana[,] is the duly elected legislative body of the Town empowered by applicable law with conducting the legislative business of the Town; and
>
> WHEREAS, the Town of St. John has previously annexed via [the Annexation Ordinance] taking effect on January 1, 2020, [the Property] with the alleged zoning classifications of . . . RC-2 PUD respectively by a vote of four (4) in favor and one (1) opposed; and
>
> WHEREAS, [the Unanimous Vote Ordinance] of the Town of St. John municipal code provides that "all land shall be annexed

to the Town with a[] R-1 residential single-family zoning designation unless the Town Council unanimously assigns the annexed land to a different zoning district at the time of annexation."

WHEREAS, the annexed property described above should be given a R-1 residential single family zoning classification pursuant to [the Unanimous Vote Ordinance]; and

WHEREAS, in the interest of clarity, the Town Council desires to clarify the zoning classification of [the Property] by initiating change in the zone map of that property to R-1 single family residential pursuant to I.C. 36-7-4-602(c).

NOW THEREFORE, BE IT RESOLVED by the Town Council of the Town of St. John, Lake County, Indiana, as follows:

1. That the Town Council hereby initiates a Property to Change the Zone Map of [the Property] . . . from RC-2 PUD to R-1 single family residential and incorporate the same into the zoning ordinance.

2. That the Town Council hereby directs the Plan Commission to prepare the Proposal to change the Zone Maps consistent with the Resolution instanter.

3. That the Town Council hereby directs the Plan Commission to prepare, hold public meetings, and take all actions required by law with respect to Proposal to Change the Zone Map for [the Property].

*Id.* at 84-85.

Meanwhile, BLB St. John, LLC (BLB)—a property developer related to LBL— already was challenging the Unanimous Vote Ordinance in a separate zoning dispute. The trial court presiding over BLB's petition for judicial review ruled

that the Unanimous Vote Ordinance was a valid exercise of the Town's Home Rule authority. *See* Ind. Code § 36-1-3 *et seq.* (commonly known as the Home Rule Act, which abrogated the traditional rule that local government possesses only those powers expressly authorized by statute). Although this Court accepted jurisdiction over BLB's interlocutory appeal of that decision, the parties later settled their dispute, prompting this Court to dismiss the appeal in early 2022. *BLB St. John, LLC v. Town of St. John*, case number 20A-PL-01323 (Ind. Ct. App. Feb. 28, 2022). That left intact the trial court's decision in the BLB case.

[7] Before BLB's appeal was resolved, however, the Commission denied LBL's proposed plat application because it did not comply with R-1 zoning requirements. Around the time that BLB initiated its appeal to this Court, LBL sought judicial review of the Commission's denial of LBL's proposed plat. LBL argued that the Commission's denial of the proposed plat was: (1) arbitrary, capricious, an abuse of discretion, and not in accordance with the law; (2) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (3) without observance of procedure required by law; and (4) unsupported by substantial evidence.

[8] The trial court affirmed the Commission's denial of LBL's plat, finding the BLB decision binding in LBL's case. The court therefore concluded that the Commission properly determined that the Property was zoned R-1 under the Unanimous Vote Ordinance, rather than RC-2 PUD under the Annexation Ordinance. LBL appeals that judgment.

## Discussion and Decision

[9] LBL contends the trial court incorrectly affirmed the Commission's rejection of LBL's plat. When reviewing the Commission's decision, we apply the same standard of review as the trial court. *Essroc Cement Corp. v. Clark Cty. Bd. of Zoning Appeals*, 122 N.E.3d 881, 890 (Ind. Ct. App. 2019). We do not reweigh the evidence, reassess the credibility of the witness, or substitute our judgment for that of the Commission. *Plan Com'n of Harrison Cty. v. Aulbach*, 748 N.E.2d 926, 932 (Ind. Ct. App. 2001). But we review de novo any questions of law decided by the Commission. *Noblesville, Ind., Bd. of Zoning Appeals v. FMG Indianapolis, LLC d/b/a Reagan Outdoor Advertising*, No. 23S-PL-00114, 2023 WL 6209522, at *6 (Ind. Sept. 25, 2023). We will affirm "[i]f the commission's decision is correct on any of the grounds stated for disapproval." *Aulbach*, 748 N.E.2d at 933.

## I. Overview

[10] LBL essentially claims that the Commission usurped the Town Council's role by allegedly determining the Property's zoning. The Town Council is the legislative body for the Town. Ind. Code §§ 36-5-2-1, -2. In that capacity, the Town Council has the authority to "adopt ordinances and resolutions for the performance of functions of the town." Ind. Code § 36-5-2-9. The Town Council also "has exclusive authority to adopt a zoning ordinance under the 600 series." Ind. Code § 36-7-4-601(a).

[11] The "600 series" is a set of statutes that, among other things, prescribes the procedures for legislative bodies like the Town Council to enact zoning ordinances and change zoning maps. Ind. Code § 36-7-4-600 *et seq.* These statutes specifically authorize the Town Council to create, via a zoning ordinance, "one (1) or more districts, which may be for . . . residential, special, or unrestricted uses and any subdivision or combination of these uses." Ind. Code § 36-7-4-601(d)(1). Indiana Code § 36-7-4-602 authorizes the Commission's proposal but not adoption of zoning ordinances, which remains the Town Council's sole domain under the 600 series. *See* Ind. Code § 36-7-4-601(a).

[12] The "700 series" of statutes is more specific about the handling of "subdivision control" by the Town Council and Commission. Ind. Code § 36-7-4-700 *et seq*. The initial task of determining the proper zoning for subdivisions belongs to the legislative body—here, the Town Council—through its adoption of a subdivision control ordinance. Ind. Code § 36-7-4-701(a) ("The legislative body shall, in the zoning ordinance adopted under the 600 series of this chapter, determine the zoning districts in which subdivision of land may occur.").

[13] Once the Town Council adopts a subdivision control ordinance and that ordinance is properly recorded, the Commission "has exclusive control over the approval of all plats and replats involving land covered by the subdivision control ordinance." Ind. Code § 36-7-4-701(b). But the Commission's control is limited by the subdivision control ordinance, which mandates that "all subdivisions shall conform to the Zoning Ordinance . . . for the Municipality."

Town of St. John Municipal Ordinance 21A-4; *see generally* Ind. Code § 36-1-2-11 ("'Municipality' means city or town.").

[14] In keeping with that limitation, the Commission's "role when reviewing plat applications is to determine whether a plat presented to [it] comports with the requirements of the Subdivision Control Ordinance." *Aulbach*, 748 N.E.2d at 936. The Commission's staff "review the application for technical conformity with the standards fixed in the subdivision control ordinance," Indiana Code § 36-7-4-705, and the Commission "make[s] written findings" of its decision to grant or deny primary approval of the plat. Ind. Code § 36-7-4-707(a)-(b).

[15] After the Commission rejects a plat, the developer may seek judicial review of that decision under Indiana Code 36-7-4-1016. Indiana Code 36-7-4-1016(b) ("[a] final decision under the 700 series" is "subject to judicial review in accordance with the 1600 series of this chapter"); Ind. Code § 36-7-4-715(a)(1) (identifying "[p]rimary approval or disapproval of a plat" as a "final decision[] of the plan commission that may be reviewed as provided by section 1016 of this chapter").

[16] Under the "1600 series" statutes, the party seeking judicial review carries the burden of proving the invalidity of the Commission's decision. Ind. Code § 36-7-4-1614(a). The party must show prejudice and that the zoning decision is:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

> (2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

Ind. Code § 36-7-4-1614(d).

## II. LBL's Claims

With that statutory backdrop, we turn to LBL's specific claims. Within its primary claim that the Commission erroneously rejected LBL's proposed plat by improperly treating the Property as zoned R-1, LBL raises several narrower contentions.

First, LBL asserts that the Commission's duties are merely ministerial, and the Commission therefore lacked authority to determine the Property was zoned R-1. Second, LBL asserts the Commission's R-1 zoning determination was a legal conclusion based on improper considerations. Third, LBL asserts that the trial court improperly deferred to the Commission's purported legal conclusions, leading to the court's erroneous affirmance of the Commission's rejection of the plat. Finally, LBL asserts that the Unanimous Vote Ordinance, which specifies R-1 zoning for the Property, does not apply; instead, only the Annexation Ordinance, which specifies RC-2 PUD zoning for the Property, governs the Property's zoning. We address each of LBL's contentions in turn.

## A. Authority to Determine Zoning

[19] The Commission did not overstep its authority by treating the Property as zoned R-1. Although the Town Council designates zoning for subdivisions, the Commission is responsible for determining whether proposed subdivision plats comply with the technical requirements of that zoning. Ind. Code §§ 36-7-4-701(a)-(b), -705, -707(a). If the Commission is to fulfill its statutory duty, the Commission necessarily must determine the zoning designated by the Town Council for the land to which the proposed subdivision plat relates. Otherwise, the Commission could not determine whether a plat conforms to the requirements of the particular zoning designation.

[20] The Commission did not designate R-1 zoning for the Property, as LBL suggests. The Commission simply concluded that the Town Council had done so. The Commission proceeded, consistent with its statutory authority, to find that LBL's proposed plat for the Property did not comply with all R-1 zoning requirements. Ind. Code § 36-7-4-701(b), -705, -707(a).

## B. Legal Conclusion

[21] We also are unpersuaded by LBL's claim that the Commission entered an improper legal conclusion when it found the Property was zoned R-1. LBL first seems to suggest that the Commission was precluded from entering legal conclusions at all, given that its duties are ministerial. But the Commission may approve a plat proposal only when it is consistent with the ordinance's zoning requirements. Ind. Code § 36-7-4-701(b); Town of St. John Municipal Ordinance 21A-4. To accomplish this, the Commission necessarily enters legal

conclusions based on its reasonable interpretation of the governing statutes and ordinances. *See Story Bed & Breakfast, LLP v. Brown Cty. Area Plan Com'n,* 819 N.E.2d 55, 65 (Ind. 2004) ("Interpretation of a zoning ordinance is a question of law.").

[22] Alternatively, LBL contends the Commission's legal conclusions are substantively defective. It claims the Commission: (1) improperly relied on the trial court's order in the BLB case; and (2) determined "the Council's [Annexation Ordinance"] was invalid and, consequently, that the property at issue was zoned R-1, not RC-2 PUD." Appellant's Br., p. 22. We address each claim in turn.

### i. BLB Order

[23] The Commission did not exceed its authority in considering the prior BLB order. We first note that LBL's counsel invited consideration of the same order about which it now complains. In initial remarks to the Commission during the meeting at which the proposed plat was denied, LBL's counsel argued that the BLB order, by its terms, did not apply to LBL's plat. The Commission's counsel countered that the terms of the BLB order directly conflicted as to whether it applied to the Property. The Commission's counsel, though, stated his belief that the Property was zoned R-1.

[24] The Commission then discussed how the BLB order impacted its decision making and whether the Commission should delay a decision until the BLB appeal, then pending, was decided. LBL's counsel specifically requested an

immediate decision, and a motion to defer the matter failed by one vote. The Commission later denied LBL's plat application as non-compliant with R-1 zoning. None of the Commission members orally specified the reasons for their vote.

[25] The Commission's written findings required by Indiana Code § 36-7-4-702 do not even mention the BLB order. Instead, those findings reflect that the Commission rejected LBL's proposed plat because "the plat . . . does not provide for acceptable establishment of minimum width, depth, and area of lots within the subdivision inasmuch as it does not meet with minimum requirement[s] of the St. John Zoning Ordinance." App. Vol. II, p. 28.

[26] This paper record establishes that the Commission considered the BLB order but not the extent to which the Commission relied on it when voting to reject LBL's proposed plat. If LBL is arguing that the Commission ultimately concluded it was bound by the BLB order, the record does not confirm LBL's claim.

## ii. Validity of Annexation Ordinance

[27] We also reject LBL's claim that the Commission erroneously decided a legal question by determining, based on the BLB order, that the Annexation Ordinance was invalid and that the Property was therefore zoned R-1, not RC-2 PUD. Nothing in the record suggests the Commission determined the Annexation Ordinance was invalid.

Although the Commission members never explained their exact reasoning for determining the Property was zoned R-1, the pre-vote discussions at the meeting focused on the BLB order and construing the Annexation Ordinance alongside the Unanimous Vote Ordinance and Resolution 2020-01-01. This interplay between the ordinances, and the effect of Resolution 2020-01-01 on that, is central to both the LBL and BLB cases.

Even the decision in the BLB case that the Commission considered did not purport to render the Annexation Ordinance invalid. Instead, that decision merely ratified the validity of the Unanimous Vote Ordinance. The BLB order found that the Unanimous Vote Ordinance, when read jointly with an ordinance nearly identical to the Annexation Ordinance, led to R-1 zoning for the annexed property in the BLB case. App. Vol. II, pp. 33-45.

## C. Trial Court's Standard of Review

We agree with LBL that the trial court did not appear to review *de novo* the Commission's legal conclusions relating to the Town Council's choice of zoning for the Property. Instead, the trial court simply found the BLB order binding on the Commission. The trial court concluded that because no reviewing court had found the BLB order "to be a clear error of law," the trial court "is not required to examine this case de novo." App. Vol. II, p. 16. Our Supreme Court has made clear that no deference is owed to an agency's legal conclusions. *Noblesville, Ind., Bd. of Zoning Appeals v. FMG Indianapolis, LLC d/b/a Reagan Outdoor Advertising*, No. 23S-PL-00114, 2023 WL 6209522, at *6 (Ind. Sept. 25, 2023).

[31] But in exercising our own de novo review, we believe the trial court nevertheless reached the right decision: that is, it properly affirmed the Commission's denial of LBL's proposed plat. We therefore turn to the crux of this appeal: whether the Commission correctly determined that LBL's proposed plat did not meet applicable zoning requirements.

[32] The Commission did not err in denying LBL's proposed plat. The standard of review for zoning board and plan commission decisions is identical when, as here, the commission's decision involves subdivision control. Ind. Code § 36-7-4-1016(b)(1) (identifying "[a] final decision under the 700 series" as a "zoning decision" that is "subject to judicial review in the same manner as that provided for the appeal of a final decision of the board of zoning appeals" under Indiana Code § 36-7-4-1016(a)).

[33] "Under this standard, a reviewing court, whether at the trial or appellate level, is limited to determining whether the [commission's] decision was based upon substantial evidence." *Flat Rock Wind, LLC v. Rush Cty. Area Bd. of Zoning Appeals*, 70 N.E.3d 848, 857 (Ind. Ct. App. 2017). And in doing so, the reviewing court must accept the facts as found by the commission. *Id.*

[34] When the petition for judicial review challenges findings of fact, we give great deference to the commission and presume the commission's decision is correct. *Id.* But when the petition for judicial review alleges the issue to be decided is a question of law, such deference does not occur. *Id.*

[35] LBL's petition for review alleged that the Commission erroneously determined a question of law by interpreting the Unanimous Vote Ordinance and the Annexation Ordinance together to provide for R-1 zoning for the Property. When interpreting an ordinance, this Court will apply the same principles used to construe statutes. *Hauck v. City of Indianapolis,* 17 N.E.3d 1007, 1014 (Ind. Ct. App. 2014). "The first step in interpreting a statute is to determine whether the [legislative body] has spoken clearly and unambiguously on the point in question." *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007). When the language is clear and unambiguous, "we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense." *Id.*

[36] The language in the Unanimous Vote Ordinance and the Annexation Ordinance, respectively, is clear and unambiguous. The Unanimous Vote Ordinance, enacted 14 years ago, provides that "[a]ll land shall be annexed to the Town with an R-1 residential single zoning designation unless the Town Council unanimously assigns the annexed land to a different zoning district at the time of the annexation." App. Vol. II, p. 12. The Annexation Ordinance, enacted four years ago, specifies that "the zoning district classification of [the Property] is hereby determined to be RC-2 PUD Zoning District and the master zoning map is hereby amended to reflect this zoning classification." Id. at 67.

[37] The Property was annexed through the Annexation Ordinance by a split vote. The split vote did not halt the annexation of the Property, but it did impact the zoning for the Property. The alternative designation of the Property as RC-2

PUD in the Annexation Ordinance was not effective due to the split vote, given that the Town Council had determined through the Unanimous Vote Ordinance that annexed property would be R-1 unless the Council's vote to designate a different classification was unanimous.

[38] Therefore, the plain language of the two ordinances establishes that the Council designated R-1 zoning for the Property. See *Hauck*, 17 N.E.3d at 1014 ("The cardinal rule of statutory construction is to ascertain the intent of the drafter by giving effect to the ordinary and plain meaning of the language used."). And if there was any doubt as to the interplay of these Ordinances enacted by the Town Council, the Town Council resolved it by enacting Resolution 2020-01-01 on the day that the Annexation Ordinance became effective. Resolution 2020-01-01 specified that the Town Council had designated the Property's zoning as R-1.[1]

[39] But even if the language of either Ordinance were considered ambiguous and warranted application of the rules of statutory construction, our conclusion would not change. "[S]tatutes relating to the same general subject matter are in *pari materia* and should be construed together so as to produce a harmonious statutory scheme." *Erie Ins. Exchange v. Myron Corp.*, 212 N.E.3d 174, 180 (Ind.

---

[1] Throughout its brief, LBL incorrectly maintains the Town Council zoned the Property RC-2 PUD and that the Commission improperly changed that zoning to R-1. The Property was never zoned RC-2 PUD by the Town Council. Because the Annexation Ordinance purporting to zone the Property RC-2 PUD was enacted by split vote, the Unanimous Vote Ordinance dictated that the initial zoning classification would be R-1. The Property was zoned R-1 from the start and remained R-1 throughout these proceedings.

Ct. App. 2023) (quoting *Sanders v. Bd. of Comm'rs of Brown Cty.*, 892 N.E.2d 1249, 1252 (Ind. Ct. App. 2008)). LBL would have us simply ignore the Unanimous Vote Ordinance and give effect to the Annexation Ordinance, but LBL offers no valid basis for doing so.

[40] If the Annexation Ordinance were interpreted as creating RC-2 PUD zoning for a property newly annexed by split vote, that interpretation would render the Unanimous Vote Ordinance superfluous. "When interpreting statutes, we must strive to avoid an interpretation that renders any parts of the statutes meaningless or superfluous." *Matter of Paternity of M.M.*, 137 N.E.3d 1019, 1023 (Ind. Ct. App. 2020).

[41] LBL's challenge to the validity of the Unanimous Vote Ordinance is also unavailing. The essence of LBL's attack is that the 2009 Town Council that enacted the Unanimous Vote Ordinance could not properly bind later Town Councils through that ordinance. But the Unanimous Vote Ordinance did not have that restrictive effect. Any later Town Council, including the one that approved the Annexation Ordinance, was free to repeal the Unanimous Vote Ordinance. None did, meaning that the Unanimous Vote Ordinance and the Annexation Ordinance together provided for R-1 zoning for the Property.

[42] In sum, LBL has not met its burden of demonstrating the Commission erred when rejecting LBL's plat because, as LBL concedes, the plat did not comply with R-1 zoning requirements. *See* Ind. Code § 4-21.5-5-14(a). Given this determination, we need not decide the other claims raised by the parties or the

trial court's alternative reasoning for affirming the Commission's decision. *See Aulbach*, 748 N.E.2d at 933 (authorizing affirmance when the commission's decision is correct on any of the challenged grounds).

[43] We affirm.

Riley, J., and Bradford, J., concur.