Giancarlo DiMIZIO and Antonio DiMizio d/b/a Luca Pizza of Anderson, Appellants–Plaintiffs,

v.

Oswaldo ROMO and Lemia Romo d/b/a Romo's Pizza, Appellees–Defendants.

No. 48A02–0103–CV–138.

Court of Appeals of Indiana.

Oct. 11, 2001.

Jane Ruemmele, Huffer & Weathers, Indianapolis, IN, Attorney for Appellants.

Tommy L. Strunk, Indianapolis, IN, Attorney for Appellees.

## OPINION

VAIDIK, Judge.

### Case Summary

Giancarlo and Antonio DiMizio appeal from a negative judgment involving a breach of contract action arising out of the sale of a pizza restaurant and the duty to pay commissions on gross sales as provided for in the Addendum and Modification of the Contract of Sale. Specifically, the DiMizios contend that Lemia Romo, the wife of the Buyer, Oswaldo Romo, was a proper party to the lawsuit and that they are entitled to commissions from the Romos for so long as they operate a pizza restaurant in the Mounds Mall located in Anderson, Indiana. Because we find that Lemia Romo was not a party to either the Contract or its Modification, we affirm the trial court on that issue. However, we reverse the trial court's ruling as to Romo's liability for failure to pay commissions as provided for in the Modification of the Contract of Sale and remand for a recalculation of damages owed to the DiMizios.

### Facts and Procedural History

The evidence most favorable to the judgment is as follows. On January 6, 1991, the DiMizios entered into a Contract with Oswaldo Romo for the sale of Luca Pizza of Anderson for the sum of $150,000.00 at 7% per annum.[1] Further, the Contract provided that Romo would, "[u]pon complete payment of the $150,000.00 purchase price, . . . initiate payment to Sellers of a 6% fee on the gross receipts less sales tax for the remaining period of the lease and any extensions of the lease as hereinafter provided." Appellant's App. P.207. The Contract also contained a provision allowing for the recovery of attorney's fees and costs by the prevailing party of any dispute arising out of or relating to the Contract or its breach.

Subsequently, Romo requested that the percentage fee collected on the restaurant's gross receipts be reduced. The DiMizios agreed to reduce their commission and entered into a written modification of their original Contract of Sale with Romo on September 11, 1996. The Addendum and Modification of the Contract provided:

---

1. The pizza restaurant was operated on premises leased in the Mounds Mall. The lease, entered into by the DiMizio brothers and Si- mon Property Group, was due to expire on January 31, 1998.

In consideration of the promise of the Sellers not to seek enforcement of the terms of the Original Contract regarding payment of a percentage of the gross receipts, and for other valuable consideration as set forth in the Original Contract and this Addendum and Modification, the Buyer shall pay to Sellers Two percent (2%) of the gross receipts of the business, for a period of two (2) years, the percentage of gross receipts paid to Sellers shall be three percent (3%) for so long as the Buyer operates a pizza restaurant in the City of Anderson in the Mounds Mall.

Appellant's App. P.211. The parties reaffirmed all of the terms of the original Contract not inconsistent with the Modification.

In December of 1997, without any direct assistance from the DiMizios, Romo renegotiated a new lease with the Simon Property Group to commence upon the expiration of the previous lease held by the DiMizios. Romo discontinued payment of the commissions due to the DiMizios following his January 24, 1998 payment. As a result, the DiMizios sued Romo and his wife, Lemia Romo, for breach of contract. Romo defended based on lack of consideration, acceptance and mutual assent and failure to state a claim upon which relief can be granted. Further, Romo counterclaimed for attorney's fees arising under the Contract and attorney's fees as provided by Indiana Code § 34–54–1–1(b) for having to defend the frivolous lawsuit filed against his wife who Romo alleged was not a proper party to the lawsuit since she had signed neither the original Contract nor the Modification.

The trial court entered findings of fact and conclusions based thereon in favor of Romo on both the complaint and counterclaim. The DiMizios filed a Motion to Correct Errors, which the trial court denied. This appeal ensued.

### Discussion and Decision

The DiMizios present several issues for our review, which we distill into two issues: whether Lemia Romo was a proper party to the lawsuit and whether a valid contract existed between the DiMizios and Romo, which Romo breached by ceasing to pay commissions provided for in the Contract, thereby entitling the DiMizios to commissions due and owing and attorney's fees. We address each issue in turn.

The DiMizios appeal from a negative judgment. To prevail on appeal, therefore, the DiMizios must demonstrate that the trial court's judgment is contrary to law. *Thor Elec., Inc. v. Oberle & Assocs., Inc.*, 741 N.E.2d 373, 381 (Ind.Ct. App.2000). A judgment is contrary to law only if the evidence in the record, along with all reasonable inferences, is without conflict and leads unerringly to a conclusion opposite that reached by the trial court. *Id.* In conducting our review, we cannot reweigh the evidence or judge the credibility of any witness, and must affirm the trial court's decision if the record contains any supporting evidence or inferences. *Id.* Where, as here, the trial court enters findings of fact and conclusions, we treat the verdict as a general verdict, with the special findings controlling only as to those issues they cover. *In re S.T.*, 621 N.E.2d 371, 373 (Ind.Ct.App.1993). We will affirm the trial court's judgment upon any legal theory consistent with the evidence. *Id.*

### I. Lemia Romo

The DiMizios assert that Lemia Romo is a proper party to the breach of contract action. We disagree.

A person typically cannot be held liable for breach of contract unless it is shown that she was a party to the contract. *Columbia Club, Inc. v. Am. Fletcher Real-*

*ty Corp.,* 720 N.E.2d 411, 417 (Ind.Ct.App. 1999), *trans. denied.* Contractual obligations are personal in nature and privity of contract is essential for the establishment of contractual liability. *Id.* The DiMizios fail to establish that a contractual relationship existed between them and Lemia Romo. Undisputed facts reveal that only Oswaldo Romo, and not Lemia, signed the original Contract and the Modification. Because Lemia signed neither instrument upon which the DiMizios assert their theory of breach, no right of action could accrue in favor of the DiMizios against Lemia. Accordingly, we affirm the trial court's finding that Lemia is not a proper party to the breach of contract action, that maintenance of the action against Lemia was frivolous, and its award of attorney's fees according to Indiana Code § 34–52–1–1(b).

## II. Breach of Contract

The DiMizios contend that Romo breached their contract by ceasing to make payments in accordance with the Modification, thereby entitling the DiMizios to commissions due and owing and attorney's fees as provided for in the original Contract. To support this contention, the DiMizios assert that the trial court erred by failing to find an enforceable contract that obligated Romo to pay the commission to the DiMizios "for so long as the Buyer operates a pizza restaurant in the City of Anderson in the Mounds Mall." Appellant's App. P.211. Specifically, the DiMizios allege that the trial court's findings of fact and conclusions based thereon, which stated that the modified contract lacked mutual assent and consideration, were unconscionable, and its enforcement would result in unjust enrichment, are clearly erroneous. We examine each allegation in turn.

### A. Mutual Assent

The trial court concluded that the "Contract of Sale … lacks mutual assent." Appellant's App. P.7. We disagree. The law concerning contracts is well settled in Indiana. An offer, acceptance, plus consideration make up the basis for a contract. *Homer v. Burman,* 743 N.E.2d 1144, 1146–47 (Ind.Ct.App.2001), *reh'g denied.* "A mutual assent or a meeting of the minds on all essential elements or terms must exist in order to form a binding contract." *Id.* (quoting *Pinnacle Computer Services, Inc. v. Ameritech Pub.,* 642 N.E.2d 1011, 1013 (Ind.Ct.App. 1994)). However, "[a]ssent to those terms of a contract may be expressed by acts which manifest acceptance." *Id.*

In the instant case, Romo performed as specified in the Contract of Sale by paying a six percent commission from the signing of the Contract on January 6, 1991, until the Contract was modified on September 11, 1996. Thereafter, Romo continued to pay the commissions due to the DiMizios at the renegotiated rate until January 24, 1998. Based on these actions, we find that Romo expressed consent to the terms of both the original Contract and its Modification, which manifest acceptance of the duty to pay the commission to the DiMizios. Therefore, we conclude that the Contract and its Modification were supported by mutual assent.

### B. Consideration

In addition, the trial court concluded that "there is no consideration for a commission to be paid to Plaintiffs." Appellant's App. P.7. We find this conclusion to be erroneous. Under the common law of contracts, a written agreement may be modified by a subsequent written agreement so long as there exists consideration to support the modification. *See Hamlin v. Steward,* 622 N.E.2d 535, 539 (Ind.Ct. App.1993). The concept of consideration is oftentimes encapsulated by the phrase "bargained for exchange." *Id.* "To constitute consideration, there must be a benefit

accruing to the promisor or a detriment to the promisee." *Id.* (quoting *A & S Corp. v. Midwest Commerce Banking Co.,* 525 N.E.2d 1290, 1292 (Ind.Ct.App.1988)). A benefit is a legal right given to the promisor to which the promisor would not otherwise be entitled. *OVRS Acquisition Corp. v. Community Health Servs., Inc.,* 657 N.E.2d 117, 126 (Ind.Ct.App.1995). A detriment, on the other hand, is a legal right the promisee has forborne. *Id.*

The Modification entered into by the DiMizios and Romo set forth the consideration to support the modification as follows:

> *In consideration of the promise of the Sellers not to seek enforcement of the terms of the Original Contract regarding payment of a percentage of the gross receipts,* and for other valuable consideration as set forth in the Original Contract and this Addendum and Modification, the Buyer shall pay to Sellers Two percent (2%) of the gross receipts of the business, for a period of two (2) years, the percentage of gross receipts paid to Sellers shall be three percent (3%) for so long as the Buyer operates a pizza restaurant in the City of Anderson in the Mounds Mall.

Appellant's App. P. 211 (emphasis added). This provision satisfies the consideration requirement as it sets forth a bargained-for-exchange. Under these facts, the DiMizios gave up their right to collect a six percent (6%) commission by substituting a lower percentage in an effort to help out Romo, who claimed to be struggling financially. However, the DiMizios also benefited by potentially extending the duration of time the commissions could be collected. Similarly, Romo experienced both a benefit and a detriment as a result of the Modification. While the Modification granted Romo some relief from the higher commission, at the same time, it had the consequence of extending the period of time in which the DiMizios would be entitled to collect a commission from Romo.

Romo argues that the consideration for the Modification consisted of the DiMizios' promise to "continue to offer their assistance in renewing and continuing the lease with Mounds Mall, and in consulting with the Buyer in other matters affecting the pizza business." Appellant's App. P.211. Further, he asserts that the DiMizios did not assist in obtaining the new lease, nor did they consult with him in other matters affecting the pizza business. While our review of the record supports Romo's assertion that the DiMizios did not directly assist Romo in securing a new lease with Simon Group, we do not find this fact to be of consequence as to the issue of whether sufficient consideration supported the Modification. As mentioned above, the Modification contained a clear recitation of the consideration underlying the contract as modified that was independent of the DiMizios providing their assistance. Thus, Romo's attack based on lack of consideration due to his renegotiating the new lease without the DiMizios' assistance must fail.

### C. Unconscionability

The trial court found that "no sensible person not under delusion, duress or in distress would sign a contract to pay a commission for no reason forever and no honest or fair person would accept such terms." Appellant's App. P.5. Based upon its findings, the trial court then declared that the "Contract of Sale is unconscionable." Appellant's App. P.7. We are not similarly convinced. Our unconscionability jurisprudence is sub-divided into two branches: substantive and procedural. Hahn v. Ford Motor Co., 434 N.E.2d 943, 951 (Ind.Ct.App.1982). Substantive unconscionability refers to oppressively one-sided and harsh terms of a contract, while procedural unconscionability involves the

manner and process by which the terms become part of the contract. Id.

Our supreme court has described substantive unconscionability as follows:

> When the weaker party, in need of goods or services, is not in a position to shop around for better terms, either because the author of the standard contract has a monopoly or the other competitors use the same contract, the parties are not in an equal bargaining position and application of the doctrine of unconscionability is appropriate.

Terry v. Ind. State Univ., 666 N.E.2d 87, 93 (Ind.Ct.App.1996) (citing Weaver v. Am. Oil Co., 257 Ind. 458, 464, 276 N.E.2d 144, 146 (1971)). Our review of the briefs and the record failed to uncover facts sufficient to support a finding of substantive unconscionability. While it is true that in obtaining the modification Romo could only deal with the DiMizios, we find that this fact is counterbalanced by the fact that it was Romo, and not the DiMizios, who sought the change in the original Contract's terms. Thus, we conclude that neither the original Contract nor the Modification was substantively unconscionable. Additionally, we are not convinced that the transactions involved procedural unconscionability either.

Procedural unconscionability issues arise from irregularities in the bargaining process or from characteristics peculiar to one of the parties. Romo does not allege irregularities in the bargaining process. Instead, he relies on his poor command of the English language to argue that procedural unconscionability plagued the transactions. While we do not deny that Romo may have been disadvantaged by his limited English skills, we do not find this handicap to have invalidated either of the transactions. In part, we note that the DiMizios encouraged Romo to seek the advice of an attorney. Despite such encouragement, Romo decided to proceed without the advice of counsel. Accordingly, we find that neither the original Contract nor the Modification is unconscionable.

Further, we take issue with the trial court's finding that "no sensible person not under delusion, duress or in distress would sign a contract to pay a commission for *no reason* forever and no honest or fair person would accept such terms" due to its misstatement of the facts. Appellant's App. P.5 (emphasis added). The trial court's conclusion that there was "no reason" for the payment of the commission is unfounded in light of the fact that the text of the Modification sets forth reasons to support the payment of the commission, such as the DiMizios' promise to continue to consult with Romo in matters affecting the pizza business.

### D. Unjust Enrichment

Finally, the trial court, as part of its conclusions, determined that "plaintiffs would be unjustly enriched to receive a commission *forever.*" Appellant's App. P.7 (emphasis added). We find no support for such a conclusion given the facts of the case at hand. There are three general types of contracts—express, implied and constructive. Ahuja v. Lynco Ltd. Med. Research, 675 N.E.2d 704, 709 (Ind.Ct. App.1996), trans. denied. Express and implied contracts are very similar. Id. They differ only in that an express contract is evidenced by spoken or written words while an implied contract is evidenced by the conduct of the parties. Id. The final type of contract, a constructive contract, is also known as a quasi-contract or a contract implied at law. City of Indianapolis v. Twin Lakes, 568 N.E.2d 1073, 1078 (Ind.Ct.App.1991), reh'g denied, trans. denied. It is a legal fiction used to refer to a situation where no contract actually exists "but where justice nevertheless warrants a recovery under the circum-

stances as though there had been a promise." *Id.* The issues of unjust enrichment and conferring a benefit arise in the context of a constructive contract. *Ahuja,* 675 N.E.2d at 709.

Unjust enrichment operates when there is no governing contract. In this case, however, there is a contract, the terms of which the DiMizios are suing to enforce. Based on the foregoing sections, it is clear that both the original Contract and its Modification satisfied the formalities required to create an enforceable contract. As such, the trial court improperly invoked the equitable theory of unjust enrichment.

Moreover, we note that while the language of the Modification does not specify that Romo's duty to pay commissions shall terminate on a given date, it also does not indicate that the duty to pay commissions lasts "forever." Appellant's App. P.7. Rather, the Modification only requires that the commission be paid "for so long as the Buyer operates a pizza restaurant in the City of Anderson in the Mounds Mall." Appellant's App. P.211.

In conclusion, we affirm the trial court as to its ruling concerning Lemia Romo, but reverse its ruling as to Romo's liability for failure to pay commissions in accordance with the Modification of the Contract of Sale. Consequently, we enter judgment in favor of the DiMizios on their breach of contract claim against Oswaldo Romo and we remand for a recalculation of damages due as of the date of the hearing on remand and attorney's fees as provided for in the Contract of Sale.

Judgment affirmed in part, reversed and remanded in part.

ROBB, J., and BROOK, J., concur.