Lola REUM, Appellant–Defendant,

v.

Marcia MERCER, Appellee–Plaintiff.

No. 18A02–0404–CV–359.

Court of Appeals of Indiana.

Nov. 29, 2004.

David J. Karnes, Dennis, Wenger & Abrell, Muncie, IN, Attorney for Appellant.

Donald H. Dunnuck, Amanda C. Dunnuck, Dunnuck & Associates, Muncie, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Lola Reum appeals the trial court's judgment in favor of Marcia Mercer on Mercer's complaint alleging fraud in the sale of Reum's home. Reum presents the following dispositive issue for our review: whether the trial court erred when it concluded that Reum had actual knowledge of an existing defect in her home's septic system at the time of the sale.

We reverse.

### FACTS AND PROCEDURAL HISTORY

In 1990, Reum purchased a house in Muncie and rented it to her granddaughter Diana VanPelt and her husband Perry VanPelt. In 1996, the VanPelts were still living there, and they noticed a problem with the septic system. Specifically, a toilet in the basement was not flushing properly. In May 1996, the VanPelts hired a plumber to pump out the septic tank. A few months later, the toilet was still not flushing properly, so Perry began to investigate the source of the problem. He eventually discovered a broken underground pipe in the septic system and replaced it with a new pipe. The area of the repair was actually located on property owned by Dorris Shaw, so Perry obtained Shaw's permission to make the repair ahead of time. In addition, the VanPelts informed Reum about the problem and the repair that was made. After that repair, which was completed in 1996, the VanPelts did not experience any other problems with the septic system.

In October 2001, Reum sold the house to Mercer. Pursuant to the purchase agreement, Mercer reserved the right to have the property inspected prior to closing, including an inspection of the septic system. In her "Seller's Residential Real Estate Sales Disclosure" statement, Reum stated in relevant part that the "septic field/bed" was "not defective." Appellant's App. at 36. Reum never informed Mercer about the problems with the septic system that had occurred in 1996. Mercer hired Paul Campbell to inspect the property prior to closing, but he did not inspect the

septic system. Mercer closed on the house, and she took possession in December 2001.

In August 2002, Mercer's neighbor Shaw informed her that sewage from Mercer's septic system was overflowing onto his property. Mercer had hired someone to pump out the septic system after she moved in, but before Shaw told her about the sewage overflow. After talking to Shaw, Mercer solicited estimates for repairing the septic system, which ranged from $6,500 to $13,000. Mercer chose the least expensive option, and a new septic system was installed in September 2003. In order to install the new system, the repairmen had to dig up much of Mercer's yard, including part of a sidewalk, and they destroyed several mature trees. The total cost to repair the septic system, replace the trees, and repair the sidewalk was $14,434.75.

In the meantime, in October 2002, Mercer filed a complaint against Reum alleging fraud, constructive fraud, and breach of express or implied warranty.[1] Reum filed a counterclaim against Mercer alleging that her complaint was frivolous, unreasonable, or groundless and seeking attorney's fees. Following a bench trial, the trial court entered judgment in favor of Mercer and found and concluded in relevant part as follows:

8. That Perry VanPelt testified that in 1996 he had the septic tank pumped because the drains in the house were slow.

9. That Perry VanPelt also testified that a couple of months after the tank had been pumped, he was still having trouble with the septic system.

10. That Perry VanPelt testified that he notified [Reum] of the trouble he was having with the septic system; *[Reum] had actual knowledge of the defect in the subject realty's septic system as of 1996.*

11. That Diana VanPelt testified [that Reum] knew of the problems with the septic system.

12. That Perry VanPelt performed some work on one of the lines/fingers on the septic system, which line ended up on Dorris Shaw's property.

13. That ... the septic lines for the subject realty extended into field tile on the Dorris Shaw property; the VanPelts were aware of the problem; Perry VanPelt replaced the collapsed portion of the field tile on the Dorris Shaw property; that Perry VanPelt performed the work on the septic system and did not have any training, certification, or expertise in septic systems; that after the work was performed, [Reum] never had the system rechecked by someone who was certified, licensed, or had special knowledge to make sure the problem was remedied.

14. That subsequent to [Mercer] moving into the residence she was contacted by the adjoining land owner, Mr. Shaw, who complained that raw sewage was on his property and believed the sewage was coming from [Mercer's] residence; there is no dispute that the origin of the sewage dumped on Dorris Shaw's property was from the subject realty; *there is also no dispute that the sewage spill was not visible from the subject realty.*

---

1. Neither the trial court in its findings and conclusions nor Mercer in her brief on appeal addresses Mercer's breach of warranty claim, so we do not address it here.

15. That [Mercer] had an inspection report done prior to purchase of the subject realty; that the septic system was not included in said report because it was not accessible to inspection.

* * *

25. The Purchase Agreement herein provides that the prevailing party in any legal or equitable proceeding against any other party brought under or in relation to the agreement or transaction shall be additionally entitled to recover costs and reasonable attorney's fees from the non-prevailing party. . . .

26. That [Mercer's] total damages are as follows:

| | |
|---|---|
| A. Septic System Repair | $ 6,500.00 |
| B. Permits | $ 70.00 |
| C. Brush Removal | $ 300.00 |
| D. Sidewalk repair and Seeding | $ 128.75 |
| E. Replacing trees | $ 7,706.00 |
| Subtotal | $14,434.75 |
| F. Attorney fees | $ 5,339.30 |
| Total | $19,774.05 |

## CONCLUSIONS OF LAW

The law in Indiana is clear, that if a seller sells real estate with knowledge of its defect and those defects are not disclosed to the purchaser then seller is liable to the buyer for the correcting of those defects.

The law states that a purchaser of property has no right to rely upon the representations of the seller as to its quality, where he has a reasonable opportunity of examining the property and judging for himself. *Pennycuff v. Fetter,* 409 N.E.2d 1179, 1180 (Ind.Ct.App. 1980); however, if the representations are not merely opinions or estimates as to the value and character of property, but representations of some material fact, and the buyer relied upon those representations and sustained damages then the buyer can maintain an action therefore. *Id.*

The testimony at trial showed that it would not have been reasonable for the buyer to inspect the septic system. Inspecting septic systems is excluded from the state standards for house inspections as testified to by Paul Campbell. . . . [A]nd the testimony also showed that the inspector would have had to dig up the yard to inspect it properly. . . . *Indiana Code Section 32–21–5–11(1) defines when sellers are not liable for errors in disclosures of defect[s]. A Seller will not be held liable for errors in disclosure if (s)he did not have actual knowledge, or relied upon information provided by a state agency, a licensed professional or someone who had special knowledge and who provided a written or oral report to the owner.*

In the present case, the evidence shows [that Reum] had actual knowledge of the defects as testified by her granddaughter, Diana VanPelt, and her husband, Perry VanPelt; therefore, it is the opinion of this court that [Reum] knew of the defect and is held liable not only for her failing to disclose the defect in the septic system, but also actively misrepresenting to the buyer that there was no defect.

[Reum] signed a disclosure statement where she had an opportunity to alert the buyer that the septic system was "defective" or that she "did not know" of the system's condition. From the testimony of her listing agent, she was persuaded from marking "do not know" to marking "not defective" since it might have alerted the buyer and spawned further investigation, potentially jeopardizing the sale.

There are cases that speak to seller liability for the disclosure statements. One case is *Kashman v. Haas,* 766

N.E.2d 417 (Ind.Ct.App.2002) and another is *Pennycuff v. Fetter*, 409 N.E.2d 1179 (Ind.Ct.App.1980). In *Kashman*, the court ruled that when a seller relies on the professional opinion as to the condition of the property, they are not held liable for information contained in the Sales Disclosure Form. . . .

In the case at bar, the seller had actual knowledge of the septic problem in 1996. She relied upon the advice of her listing agent and her granddaughter when marking "not defective," neither person had any expertise or special knowledge of septic systems or leach beds.

\* \* \*

The facts of the present case are distinguished from [*Kashman* and *Pennycuff*] because there is actual knowledge on the part of the Seller/Defendant. The testimony of the VanPelts makes it clear that as early as 1996 the Defendant knew of a problem with the septic system. [Reum] failed to have it inspected by a professional and relied on the word of her granddaughter. [Reum] does not fit into the exceptions to liability listed in Indiana Code 32–21–5–11.

\* \* \*

WHEREFORE IT IS HEREBY ORDERED, ADJUDGED AND DECREED BY THE COURT:

1.  That the Plaintiff Marcia Mercer have and recover from the Defendant Lola Reum Plaintiff's damages herein in the sum of $14,434.75, together with Plaintiff's reasonable attorney's fees herein of $5,339.30, and court costs.
2.  That Defendant Lola Reum take nothing on her counterclaim.

Appellant's App. at 11–18 (emphases added). This appeal ensued.

## DISCUSSION AND DECISION

■ Both parties submitted proposed findings and conclusions for the trial court's review, and the court ultimately adopted Mercer's proposed findings and conclusions. Indiana Trial Rule 52(A) provides that "[o]n appeal of claims tried by the court without a jury . . . the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Moreover, when a trial court has entered specific findings and conclusions along with its judgment under Trial Rule 52, we apply a two-tiered standard of review. *Plan Comm'n of Harrison County v. Aulbach*, 748 N.E.2d 926, 932 (Ind.Ct.App.2001), *trans. denied.*

■ First, we consider whether the evidence supports the findings, construing the findings liberally in support of the judgment. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Next, we determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it, and we will disturb the judgment only when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* Rather, we consider the evidence that supports the judgment and the reasonable inferences to be drawn therefrom. *Id.*

Reum contends that the trial court's findings and conclusions do not support the judgment. In particular, Reum maintains that there is no evidence that she knew about any existing defect in the septic system at the time she completed the disclosure form. Indeed, the trial court did not make any specific finding that

Reum knew of any *existing* defect at the time of sale in 2001. The trial court only found and concluded that she knew of a defect in 1996 which was subsequently repaired.

Mercer's claims for fraud are based upon the disclosure form Reum had submitted to her. Indiana Code Section 32–21–5 requires the owner of certain residential dwellings to complete and submit a disclosure form to a prospective buyer before an offer is accepted for the sale of the real estate. *See Kashman v. Haas,* 766 N.E.2d 417, 421 (Ind.Ct.App.2002) (citing former codification of chapter). The disclosure form is to state "the known condition" of several areas of the real estate, including the "water and sewer systems," and other areas that the Indiana real estate commission determines are appropriate. Ind.Code § 32–21–5–7. And Indiana Code Section 32–21–5–11 provides as follows:

> The owner is *not liable* for any error, inaccuracy, or omission of any information required to be delivered to the prospective buyer under this chapter if:
>
> (1) *the error, inaccuracy, or omission was not within the actual knowledge of the owner* or was based on information provided by a public agency or by another person with a professional license or special knowledge who provided a written or oral report or opinion that the owner reasonably believed to be correct; and
>
> (2) the owner was not negligent in obtaining information from a third party and transmitting the information.

(Emphases added). Further, Indiana Code Section 32–21–5–4 defines "defect" as follows:

> As used in connection with disclosure forms required by this chapter, "defect" means a condition that would have a significant adverse effect on the value of

the property, that would significantly impair the health or safety of future occupants of the property, or that if not repaired, removed, or replaced would significantly shorten or adversely affect the expected normal life of the premises.

In *Kashman,* this court addressed whether summary judgment in favor of the sellers of a home was appropriate under Indiana Code Section 32–21–5–11 (formerly Indiana Code Section 24–4.6–2–11). The sellers had discovered termite damage to their home in 1997 and hired Terminix to treat the home for termites and to repair any damage. When that treatment and repair was completed, the Terminix representative "orally assured Sellers that all known termite damage had been repaired." *Id.* at 422. We held that sellers "reasonably relied upon the contractor's assurances that all damage had been repaired when they completed and signed the Disclosure Form [in March 1998]." *Id.* Because the buyers did not designate any evidence to the contrary, we held that the trial court properly entered summary judgment in favor of the sellers. In particular, we stated that "we discovered no designated evidence that reveals that Sellers had actual knowledge of any *existing termite damage* to the home *at the time they completed the Disclosure Form and sold the home to Buyers.*" *Id.* (emphasis added); *see also Verrall v. Machura,* 810 N.E.2d 1159, 1164 (Ind.Ct.App.2004) (noting dispositive issue on summary judgment was whether question of fact existed regarding seller's knowledge of "extent" of defect "at the time the Disclosure Form was completed."), *trans. denied.*

In this case, the disclosure form completed by Reum stated in relevant part as follows:

> Seller states that the information contained in this Disclosure is correct to the best of Seller's CURRENT ACTUAL

KNOWLEDGE as of the above date [July 14, 2001]. The prospective buyer and the owner may wish to obtain professional advice or inspections of the property and provide for appropriate provisions in a contract between them concerning any advice, inspections, defects, or warranties obtained on the property. . . .

Exhibit B (emphasis in original). The form then indicated that the "septic field/bed" was "not defective." *Id.*

On appeal, Reum asserts that the trial court's judgment is clearly erroneous because the court did not make any finding or conclusion regarding her actual knowledge of any *existing* defect in the septic system *at the time she completed the disclosure form.* Indeed, the disclosure form expressly states that the disclosures were based on Reum's "current actual knowledge." *Id.* Mercer maintains that Reum is liable because she failed to disclose the defect in the septic system that occurred in 1996, which was not repaired by a professional repairman.

In essence, the trial court concluded that, despite the absence of any evidence of a defect in the septic system between 1996 and 2001, Reum was required to disclose the defect in the septic system that had occurred five years before the sale because she did not have it professionally repaired or otherwise assessed by someone with "special knowledge" about septic systems. Our reading of the statute and relevant case law leads us to conclude that there is no such requirement on the part of a seller. The plain language of the statute provides that an owner is not liable if (1) she has no actual knowledge of a defect, *or* (2) she is relying on information provided by someone "with a professional license or special knowledge." I.C. § 32–21–5–11. In other words, if a seller knows of an existing defect but hires someone with a professional license or special knowledge to alleviate that defect and so informs her, she is exempt from liability. If, in the alternative, a seller does not have actual knowledge of a defect, she has no reason, and is not required, to consult a professional. Because it is undisputed that Reum did not seek the advice of someone experienced with septic systems, the dispositive issue on appeal is whether there is evidence that Reum had actual knowledge of an existing defect in the septic system at the time she completed the disclosure form.

■ The evidence is undisputed that neither the VanPelts nor Shaw had any knowledge of a defect in the septic system from the time of the final repairs in 1996 until the time Reum sold the house to Mercer in 2001, a period of some five years. Shaw testified that after the repairs in 1996, he noticed that it was "moist" in the area where Perry had replaced the pipe in Shaw's yard, but "it didn't dawn on [him] that the septic system was leaking." Transcript at 113, 120. And it was not until August 2002, when Shaw complained to Mercer, that anyone knew about an existing defect in the septic system. Thus, there is no evidence and there are no reasonable inferences to be drawn from the evidence that Reum had actual knowledge of any existing defect at the time that she completed the disclosure form and sold the home to Mercer in 2001. *See Kashman,* 766 N.E.2d at 422.

Mercer would have us interpret the statute to mean that a seller is required to disclose any and all defects that have ever occurred in a home that were not professionally repaired, regardless of undisputed evidence showing that the seller had no knowledge of an existing defect at the time of disclosure. But there is simply no basis in the plain language of the statute or relevant case law to support that interpre-

tation. A seller is only required to disclose existing defects of which she has actual knowledge at the time of the disclosure. *See Verrall*, 810 N.E.2d at 1164 (holding summary judgment inappropriate because question of fact "regarding [sellers'] knowledge of the extent of water leakage at the time the Disclosure Form was completed."); *Kashman*, 766 N.E.2d at 422 (noting no designated evidence that sellers had actual knowledge of "any existing termite damage to the home at the time they completed the Disclosure Form"); *see also Pennycuff v. Fetter*, 409 N.E.2d 1179, 1180 (Ind.Ct.App.1980) (holding no showing of fraud where there was "absolutely no evidence that the [seller] knew, during the sale negotiations, of their negligence [in causing water pipes to burst] or that the pipes had burst, if indeed they were at the time. What was not open to observation to the [buyers] was not open to the [seller].").

We hold that the trial court's judgment in favor of Mercer is clearly erroneous. We reverse and remand with instructions that the trial court enter judgment in favor of Reum. In addition, since the trial court found that the prevailing party in this case is entitled to costs and attorney's fees under the terms of the parties' purchase agreement, we instruct the trial court to award Reum her reasonable attorney's fees.[2]

Reversed.

SULLIVAN, J., and BARNES, J., concur.

---

**2.** The parties' purchase agreement states in relevant part as follows: "Any party to this Agreement who is the prevailing party in any legal or equitable proceeding against any other party brought under or with relation to the Agreement or transaction shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party." Appellants' App. at 34.