**Alan J. ZIMMERMAN, as Special Administrator of the Estate of Jack W. Dulin, Deceased, Appellant–Defendant,**

v.

**Edward McCOLLEY and Opal McColley, Appellees–Plaintiffs.**

No. 85A04–0407–CV–352.

Court of Appeals of Indiana.

April 26, 2005.

Donald K. McClellan, McClellan, McClellan & Arnold, Muncie, IN, Attorney for Appellant.

Larry C. Thrush, Thrush Law Office, Wabash, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Alan J. Zimmerman, Special Administrator of the Estate of Jack W. Dulin, deceased, appeals from the trial court's judgment in favor of Edward and Opal McColley on the McColleys' Petition to Enforce Settlement. Zimmerman presents a single issue for our review, namely, whether the trial court erred when it concluded that an enforceable oral agreement existed between the parties.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On April 24, 2001, the McColleys were injured when Dulin's car collided with their vehicle, and Dulin died as a result of the collision. Opal McColley's injuries were more serious than Edward's, and her medical expenses totaled approximately $100,000. The total cost of medical care for Edward's injuries was $5,000. At the time of the accident, Dulin was insured by Auto–Owners Insurance ("Auto–Owners"), and his policy limited liability coverage to $100,000 per person and $300,000 per accident.

After the McColleys received some correspondence from Auto–Owners, they asked their granddaughter, Christine Chamberlain, to assist them in their dealings with the insurance company. Chamberlain is not an attorney and had no experience with personal injury settlement negotiations, but she agreed to her grandparents' request. In September 2001, Chamberlain spoke with Rashelle Hall, an Auto–Owners claims representative, who informed Chamberlain that the McColleys had a right to hire an attorney to represent their interests. Hall also told Chamberlain that she felt "100 percent sure" that she and Chamberlain could settle the matter without an attorney, that she would no longer be able to discuss the claim with Chamberlain if an attorney were hired, and that she preferred to speak directly with Chamberlain. Transcript at 10.

Between September 2001 and March 2003, Chamberlain and Hall had no further contact. When they resumed communication on March 13, 2003, Hall advised Chamberlain that the two-year statute of limitations deadline was approaching and that a suit filed by April 24 would preserve the McColleys' claim in the event that a settlement had not been reached by that date. At some point thereafter, Hall proposed that they settle the claim for $65,000, but the McColleys rejected that offer. The McColleys also rejected Hall's subsequent offer of $75,000.

A few days before the statute of limitations would have run, Chamberlain again spoke with Hall about settling the claim. During that telephone conversation, Hall asked Chamberlain whether the McColleys would settle for $115,000, and the McColleys, who were standing in the kitchen with Chamberlain, told Chamberlain that

they would.[1] When Chamberlain returned to the phone, she accepted Hall's settlement offer on behalf of her grandparents and inquired about scheduling a meeting to receive the check and sign the releases. At that point, Hall stated that the $115,000 would be paid as a structured settlement. Chamberlain was not familiar with the concept of structured settlements, and after she heard Hall's explanation, she told Hall that her grandparents would not agree to such an arrangement.

On April 24, 2003, the McColleys filed a Complaint against Zimmerman as Special Administrator of Dulin's estate, alleging that Dulin's negligence caused them to sustain injuries. On January 2, 2004, the McColleys filed their petition to enforce settlement, alleging that a settlement for $115,000 had been reached before the date they filed suit. Following a hearing on that petition, the trial court entered judgment in favor of the McColleys and found and concluded in relevant part as follows:

7. As they approached the statute of limitations deadline of April 24, 2003, offers were exchanged between [Chamberlain] and [Hall]. [Chamberlain] recalled that an offer was made by Auto–Owners in the sum of $65,000.00, and a further offer in the sum of $75,000.00.

8. [Chamberlain] attempted to keep notes of her conversations with Rashelle Hall. Those notes indicate an escalating sense of concern in settling the matter during the final few days before the statute of limitations would run.

9. [Chamberlain] testified that she received a call from [Hall] during the final few days leading up to April 24, 2003. During that conversation, [Hall] asked [Chamberlain] whether her grandparents would settle for $115,000.00. Because her grandparents were there at the time with her, [Chamberlain] asked them whether they would be willing to settle for that amount. Her grandparents indicated in the affirmative. [Chamberlain] then communicated that response to [Hall], asking her where and when they would need to meet to receive the check and sign the releases. At that time, [Hall] indicated to [Chamberlain] that the $115,000.00 would be paid as a structured settlement. [Chamberlain] rejected the structured settlement offer.

10. [Hall] testified that she did not recall an offer of $65,000.00 being made to [Chamberlain]. She did recall an offer of $75,000.00. However, she did not recall any offer or conversation regarding settlement in the sum of $115,000.00.

11. *The court accepts [Chamberlain's] version of the events leading to an offer of $115,000.00 by Auto–Owners Insurance. [Hall] testified that she settles thousands of claims each year. [Chamberlain][,] however[,] was involved in her first negotiation of a personal injury claim. She maintained notes of her conversations and would be more likely to remember the specifics of this negotiation than [Hall].*

12. A contract is based upon an offer, acceptance and consideration. General rules applicable to construction of contracts govern construction of settlement agreements.

---

1. Hall did not disclose to Chamberlain that she was not authorized to settle the McColleys' claim for more than $75,000.

The interpretation and construction of contract provisions is a function of the courts.

13. *Rashelle Hall made an offer on behalf of Auto–Owners Insurance to settle the matter for $115,000.00. After checking with her grandparents, [Chamberlain] accepted the offer on their behalf. The contract for settlement was then ·complete.*

14. In general, settlement agreements need not be in writing to be enforceable.

15. A settlement is as binding and conclusive of the parties' rights and obligations as a judgment on the merits. If a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement. *The ·plaintiffs are entitled to a judgment in this cause based upon the settlement agreement in the sum of $115,000.00.*

Appellant's App. at 15–17 (emphases added) (citations omitted). This appeal ensued.

## DISCUSSION AND DECISION

Pursuant to Indiana Trial Rule 52(A), the trial court entered findings of fact and conclusions thereon. That rule provides in pertinent part that "[o]n appeal of claims tried by the court without a jury ... the court on appeal shall not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." When a trial court has entered specific findings and conclusions along with its judgment under Trial Rule 52, we apply a two-tiered standard of review. *Reum v. Mercer,* 817 N.E.2d 1267, 1271 (Ind.Ct.App.2004). First, we consider whether the evidence

supports the findings, construing the findings liberally in support of the judgment. *Id.* Findings are clearly erroneous only when a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Next, we determine whether the findings support the judgment. *Id.* A judgment is clearly erroneous when the findings of fact and conclusions thereon do not support it, and we will disturb the judgment only when there is no evidence supporting the findings or the findings fail to support the judgment. *Id.*

In reviewing the findings and judgment entered by the trial court, we consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will not reweigh the evidence or assess witness credibility. *In re Estate of K.A.,* 807 N.E.2d 748, 750 (Ind.Ct.App.2004). When the trial court enters findings of fact and conclusions thereon, we treat the judgment as a general judgment, with the special findings controlling only as to those issues they cover. *DiMizio v. Romo,* 756 N.E.2d 1018, 1022 (Ind.Ct.App.2001), *trans. denied.* We will affirm the trial court's judgment upon any legal theory consistent with the evidence. *Id.*

■ Zimmerman contends that the trial court's findings and conclusions do not support the judgment that an enforceable agreement exists. The law concerning contracts is well settled in Indiana. *Id.* An offer, acceptance, plus consideration make up the basis for a contract. *Id.* Settlement agreements are governed by the same general principles of contract law as any other agreement. *Georgos v. Jackson,* 790 N.E.2d 448, 453 (Ind.2003). It is established law that if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement. *Id.*

## Mutual Assent

 Zimmerman first argues that an enforceable agreement did not exist because "there was no meeting of the minds between [Chamberlain] and [Hall] to settle [the] McColley[s'] claim for $115,000." Brief of Appellant at 9. A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract. *Wallem v. CLS Indus., Inc.*, 725 N.E.2d 880, 883 (Ind.Ct.App. 2000). The intent relevant in contract matters is not the parties' subjective intents but their outward manifestation of it. *Centennial Mortgage, Inc. v. Blumenfeld,* 745 N.E.2d 268, 277 (Ind.Ct.App.2001). A court does not examine the hidden intentions secreted in the heart of a person; rather it should examine the final expression found in conduct. *Id.* The intention of the parties to a contract is a factual matter to be determined from all the circumstances. *Ochoa v. Ford,* 641 N.E.2d 1042, 1044 (Ind.Ct.App.1994).

 Here, shortly before the statute of limitations deadline, Hall called Chamberlain and asked whether the McColleys would be willing to settle for $115,000. After speaking with her grandparents, Chamberlain responded, "Yes, we'll take it." Transcript at 15. Contrary to Zimmerman's assertion, the McColleys had an enforceable expectation that the claim had, in fact, been settled when Chamberlain conveyed their acceptance to Hall, and, at that point, as the trial court correctly found, the parties had reached an enforceable oral agreement.[2]

 Still, Zimmerman maintains that there was no mutual assent to the terms of the proposed agreement and,

hence, no meeting of the minds, because Hall's inquiry was not an offer but rather part of the negotiations preliminary to making an offer. In essence, Zimmerman asserts that Hall did not intend to make an offer and that Chamberlain's subjective belief that an offer had been made did not transform Hall's inquiry into an offer. We have previously observed that "[i]t is often difficult to draw an exact line between offers and negotiations preliminary thereto." *Suyemasa v. Myers,* 420 N.E.2d 1334, 1344 (Ind.Ct.App.1981). An offer is defined as "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981); *see also Centennial Mortgage,* 745 N.E.2d at 277 (outward manifestations of party's intent govern in contract matters). But "[a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent." Restatement (Second) of Contracts § 26 (1981). "'Reason to know' depends not only on the words or other conduct, but also on the circumstances, including previous communications of the parties and the usages of their community or line of business." *Id.* § 26 cmt. a (1981).

 In this case, Hall and Chamberlain had discussed settlement of the McColleys' claim on several occasions, and, prior to their final conversation in April 2003, Hall had extended offers of $65,000 and $75,000, both of which the McColleys rejected. Further, when those offers were

---

2. Zimmerman also argues that a contract did not exist because the parties had not issued a settlement draft or signed releases. We cannot agree. Indiana law has long-recognized that "in general, settlement agreements need not be in writing to be enforceable." *Vernon v. Acton,* 732 N.E.2d 805, 809 (Ind.2000).

made, there was no mention of a structured settlement. Hall then initiated her final conversation with Chamberlain shortly before the statute of limitations deadline, and Chamberlain testified that Hall phrased her inquiry as, "Would [the McColleys] accept [$115,000]?" or "Would they settle for [$115,000]?" Transcript at 15. It was only after Chamberlain informed Hall that her grandparents accepted the $115,000 that Hall stated that the money would be paid as a structured settlement, which Hall then had to explain because Chamberlain was unfamiliar with that concept. Thus, Hall manifested a willingness to settle the claim for a lump sum of $115,000 at the moment she asked Chamberlain whether the McColleys would accept that amount; whether or not Hall actually intended to do so is immaterial. *See Michael v. Holland*, 111 Ind.App. 34, 40 N.E.2d 362, 365 (1942) (overt acts rather than party's secret intent considered when determining mutual assent to contract formation). As Judge Learned Hand aptly explained:

> A contract has, strictly speaking, nothing to do with the personal, or individual, intent of the parties. A contract is an obligation attached by the mere force of law to certain acts of the parties, usually words, which ordinarily accompany and represent a known intent.

*Hotchkiss v. Nat'l City Bank*, 200 F. 287, 293 (S.D.N.Y.1911), *aff'd* 201 F. 664 (2d Cir.), *aff'd* 231 U.S. 50, 34 S.Ct. 20, 58 L.Ed. 115 (1913). And based on their discussions, Chamberlain had no reason to know that Hall's offer was conditioned on a structured settlement provision.[3]

Zimmerman next contends that the evidence does not support the trial court's finding that Hall offered to settle the McColleys' claim for $115,000 because: (1) Hall's version of the events contrasted starkly with Chamberlain's[4]; (2) there were inconsistencies in Chamberlain's notes; (3) it is "illogical to conclude that [Hall] would offer to settle the McColleys' claim in excess of her $75,000 settlement authority"; (4) Hall does not have a history of entering into settlement agreements and later refusing to pay the agreed upon amount; and (5) there was no written document which confirmed that the parties had reached an agreement. Brief of Appellant at 14. But the trial court found that Chamberlain was "more likely to remember the specifics of [the] negotiation than [Hall]" because Chamberlain made notes of her conversations with Hall and because, unlike Hall, who settles thousands of claims each year, Chamberlain was involved in her first personal injury settlement negotiation. It was for the trial court, as fact-finder, to weigh the conflicting evidence and determine the relative credibility of the witnesses, *Weiss v. State*, 735 N.E.2d 1194, 1197 (Ind.Ct.App.2000). Zimmerman's argument amounts to a request that we reweigh the evidence and assess witness credibility, which we will not do. Accordingly, Zimmerman's argument that there was no mutual assent is without merit.[5]

---

3. We emphasize that Hall repeatedly assured Chamberlain that hiring an attorney was unnecessary and further note that an experienced attorney or a more seasoned negotiator might well have reason to know that structured settlements are common practice in the insurance industry. *See* Restatement (Second) of Contracts § 26 cmt. a (1981).

4. In particular, Hall testified that Chamberlain had demanded $115,000 and that Hall made only one settlement offer for $75,000.

5. After Hall and Chamberlain reached an impasse over the structured settlement provision, Chamberlain no longer believed that an agreement had been reached, but contrary to Zimmerman's assertion, Chamberlain's mistaken belief had no bearing on the existence

## Agency

 In the alternative, Zimmerman asserts that an enforceable contract did not exist because Hall lacked the requisite authority to bind Auto–Owners. Specifically, Zimmerman argues that Auto–Owners did not enter into a valid contract because she did not possess the authority to settle the McColleys' claim for more than $75,000 and that it was Chamberlain's responsibility to ascertain the scope of Hall's authority. In support of his argument, Zimmerman relies on *Gravens v. Auto–Owners Ins. Co.*, 666 N.E.2d 964, 966 (Ind.Ct.App. 1996), *trans. denied.* There, we held that a client was not bound to a settlement agreement negotiated by his attorney because the attorney did not first secure the client's consent to the terms of the agreement as required by Professional Conduct Rule 1.2(a). *Id.* But Zimmerman's reliance on *Gravens* is misplaced.

In *Gravens*, we recognized the rule that an attorney does not have authority to compromise an action merely by virtue of the attorney-client relationship. *Id.* We also noted that in most insurance settlements the parties understand that for a settlement to be consummated, it is the claimant, not the attorney, who must sign a release. *Id.* Thus, we concluded that, "The insurance company had no enforceable expectation that the claim had, in fact, been settled until Gravens himself had signed the release, which he declined to do." *Id.*

Here, however, there were no attorneys involved, and the issue is not an attorney's authority to settle a client's claim but the authority of an insurance company's employee to settle a claim. Specifically, the question is whether Hall, as Auto–Owners' agent, possessed apparent authority to enter into a $115,000 settlement agreement on behalf of Auto–Owners.

 Apparent authority exists where the actions of the principal give the other party the reasonable impression that the agent is authorized to enter into an agreement on behalf of the principal. *Heritage Dev. of Indiana, Inc. v. Opportunity Options, Inc.*, 773 N.E.2d 881, 888 (Ind.Ct.App.2002), *trans. denied.* Placing an agent in a position to act and make representations which appear reasonable is sufficient to endow him with apparent authority. *Scott v. Randle*, 697 N.E.2d 60, 67 (Ind.Ct.App.1998). A communication of authority made solely by the agent is inadequate. *Id.* However, when a party places an agent in the position of sole negotiator on his behalf, it may be reasonable for the third person to believe that the agent possesses authority to act for the principal. *Id.* In such instance, the conduct of the principal constitutes the requisite manifestation or communication, although indirect. *Id.* The question of whether an agency relationship exists and of the agent's authority is generally a question of fact. *Opportunity Options*, 773 N.E.2d at 888.

In this case, the trial court did not issue findings regarding Hall's authority to settle the McColleys' claim, but the undisputed evidence shows that Auto–Owners placed Hall in the position of sole negotiator. By placing Hall in that position, Auto–Owners made the necessary manifestation to instill a reasonable belief that, in the mind of Chamberlain, Hall had the authority to bind Auto–Owners, and Hall

---

of the contract. It was only *after* the contract had been formed that Hall attempted to add the structured settlement provision, and it is undisputed that Chamberlain rejected that method of payment. Thus, payment of the money as a structured settlement did not af-

fect contract formation, nor did it become a term of the agreement. *See Hamlin v. Steward*, 622 N.E.2d 535, 539 (Ind.Ct.App.1993) ("The modification of a contract, since it is also a contract, requires all the requisite elements of a contract.").

did nothing to dispel that notion. *See Malone v. Basey,* 770 N.E.2d 846, 852 (Ind.Ct.App.2002); *Scott,* 697 N.E.2d at 67. Hall informed Chamberlain of a number of important matters relevant to the settlement, including the statute of limitations deadline, Dulin's policy limits, and potential Medicare complications, but during their discussions, Hall said nothing that would indicate that she was not authorized to settle claims in excess of $75,000 without approval from Auto–Owners' legal department. Hall also told Chamberlain that she felt certain that she and Chamberlain could settle the matter, and she made several offers to settle the claim. Thus, there is ample evidence that Hall had apparent authority to enter into a $115,000 settlement agreement on behalf of Auto–Owners, and Zimmerman's assertion on this point must fail.

## Conclusion

Based on the forgoing discussion, we conclude that the trial court's determination that Auto–Owners and the McColleys entered into an enforceable oral contract to settle the McColleys' claim for a lump sum of $115,000 is not clearly erroneous.[6]

Affirmed.

KIRSCH, C.J., and VAIDIK, J., concur.

---

**6.** Zimmerman also asserts that the trial court's division of the $115,000 proceeds between Edward and Opal McColley was improper because the McColleys offered only Chamberlain's testimony as evidence of the medical expenses incurred and because they did not prove that those medical expenses were reasonable and necessary. But those rules apply when a party is seeking a damage award *in court. See, e.g., Smith v. Syd's Inc.,* 598 N.E.2d 1065, 1066 (Ind.1992). Here, we have affirmed the trial court's judgment that an oral contract existed, pursuant to which Auto–Owners agreed to pay the McColleys $115,000 to settle their claim, and it is undisputed that Dulin's policy limited liability coverage to $100,000.00 per person. It is clear that the trial court was simply enforcing the contract as it was negotiated by the parties. *See Ransburg v. Richards,* 770 N.E.2d 393, 395 (Ind.Ct.App.2002) ("As a general rule, the law allows persons of full age and competent understanding the utmost liberty of contracting, and their contracts, when entered into freely and voluntarily, are enforced by the courts."), *trans. denied.*