Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 24 2014, 6:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**ZACHARY J. EICHEL**
**MICHAEL L. EINTERZ, JR**.
Einterz & Einterz
Zionsville, Indiana

ATTORNEY FOR APPELLEE:

**JOSHUA W. CASSELMAN**
Rubin & Levin, P.C.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JESS G. REVERCOMB, SR., | ) | |
| | ) | |
| Appellant/Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1305-CC-447 |
| | ) | |
| YELLOW BOOK SALES AND | ) | |
| DISTRIBUTION COMPANY, INC., | ) | |
| | ) | |
| Appellee/Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable John F. Hanley, Judge
Cause No. 49D11-1003-CC-12977

**January 24, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Jess G. Revercomb, Sr., appeals the trial court's judgment that he assumed liability as both a corporate representative and as a personal guarantor when he signed five advertising contracts with Yellow Book Sales & Distribution Company, Inc. ("Yellow Book") on behalf of R&G Construction. Finding that, based upon the unambiguous text of the contract, Revercomb did assume liability as both a corporate representative and a personal guarantor, we affirm.

**Facts and Procedural History**

From February 2007 to September 2008, Revercomb signed five Yellow Book contracts for advertisements of R&G Construction in the Boone, Hamilton, and greater Indianapolis telephone directories. Each contract had one signature line. On the February 2007 contract, Revercomb wrote both "president" and "owner" after his signature. Ex. 1. On three other advertising contracts, Revercomb wrote "owner" after his signature. Ex. 2-4. On the September 2008 contract, he wrote "president" after his name. Ex. 5.

Each contract was a standard Yellow Book form contract containing almost identical language. *See* Ex. 1-5. Directly underneath Revercomb's signatures on the five contracts[1] it is written "**Authorized Signature Individually and for the Customer** (Read paragraph 15F[2] on the reverse hereof)." Ex. 1-5.

---

[1] The language below the signature line of the February 2007, August 2007, and January 2008 contracts is identically reproduced. Under the signature line of the February 2008 and September 2008 contracts, the language directs the signer to read "Paragraph 15" rather than "Paragraph 15F." Ex. 4-5.

[2] Although text under the signature line in the August 2007 contract directs the reader to Paragraph 15F, the relevant contractual language can actually be found in Paragraph 15G. Paragraph 15F is correct in both the February 2007 and January 2008 contracts.

Paragraph 15 provides, in relevant part:

> The signer agrees that he/she has the authority and is signing this agreement, (1) in his/her individual capacity, (2) as a representative of the Customer, (3) as a representative of the entity identified in the advertisement or for whose benefit the advertisement is being purchased (if the entity identified in the advertisement is not the same as the Customer or signer). By his/her execution of this agreement, the signer personally and individually undertakes and assumes, jointly and severally, with the Customer, the full performance of this agreement, including payment of the amounts due hereunder.

*Id.*

The front page of each contract also refers the signer to the terms and conditions on the reverse side, with the following language in capitalized print:

> THIS CONSTITUTES A CONTRACT FOR ADVERTISING WITH YELLOW BOOK SALES AND DISTRIBUTION COMPANY, INC . . . . IN THE NEXT EDITION OF THE ABOVE TELEPHONE DIRECTORY(IES). THE TERMS AND CONDITIONS SET FORTH HEREIN AND ON THE REVERSE HEREOF ARE AGREED TO BY CUSTOMER AND SIGNER.

*Id.*

Also within paragraph 15, the contract stated:

> This agreement supercedes [sic] any other verbal or written agreement between Customer and Publisher. This agreement may not be changed except by a writing signed by an authorized signatory of Customer and Publisher.

Yellow Book published all advertisements under the contracts except for the 2008 Boone County contract, which was canceled. Tr. p. 14-15. R&G Construction failed to pay Yellow Book a total owed amount of $11,003.74 for the published advertisements. Ex. 6. The terms and conditions of the advertising contracts further provide for the recovery

3

of costs and expenses incurred by Yellow Book in the event of nonpayment, including reasonable attorney fees.

Yellow Book filed its Amended Complaint on Contract and Guaranty against R&G Construction and Revercomb. Appellee's App. p. 1-3. The Complaint sought judgment against both R&G Construction and Revercomb for the unpaid balance of Yellow Book's advertising contracts. In its Answer, R&G Construction admitted that it had entered into the contracts and that the signature on the contracts was Revercomb's. It, however, denied that Revercomb had entered into a personal guaranty for R&G Construction's unpaid balance. *Id.* at 16-20.

Yellow Book moved for summary judgment on its amended complaint against R&G Construction and Revercomb. Appellant's App. p. 4. Revercomb filed a cross-motion for summary judgment. *Id.* at 5.

After a hearing on the cross-motions for summary judgment, the trial court granted Yellow Book's motion for summary judgment against R&G Construction, denied Yellow Book's motion for summary judgment against Revercomb, and denied Revercomb's cross-motion for summary judgment against Yellow Book. Appellee's App. p. 21-22. The court entered judgment against R&G Construction in the amount of $11,003.74 principal, $2,170.59 interest, and $4000.00 attorney's fees. *Id.* at 24.

A bench trial was held on the only remaining issue—Revercomb's personal liability. At trial, Natalia Anderson, a paralegal and corporate representative of Yellow Book, testified. According to Anderson, when securing a contract, Yellow Book sales representatives generally point out the important aspects in a contract, which include the

4

individual liability of the signer.  Tr. p. 21-22.  It is also Yellow Book's general practice to leave a copy of the contract with the customer.

Revercomb also testified at trial.  According to Revercomb, the Yellow Book sales representative only discussed each advertisement and told him to sign on the signature line. *Id.* at 32.  On cross-examination, Revercomb admitted to signing the contracts, but stated that he did so as president of R&G Construction.  *Id.* at 33-34.  According to Revercomb, he signed some contracts as "president" and others as "owner" because he signed them at different times and was "probably doing some other work trying to survive our business . . .." *Id.* at 36.

The trial court entered an order finding that Revercomb "assumed liability as both corporate representative and as a personal guarantor" and entered judgment against Revercomb for $11,003.74, plus attorney's fees of $3,575.55 and statutory interest.  Appellant's App. p. 12-13.

Revercomb now appeals.

**Discussion and Decision**

Revercomb argues that the trial court erred when it awarded judgment against him because no valid guaranty contract existed between Revercomb and Yellow Book.  Specifically, he argues that the trial court erred in finding that one signature could bind him both as a corporate representative and as an individual.  Our standard of review is well settled.  When a trial court has made findings of fact, we must first determine whether the evidence supports the findings and then whether the findings support the judgment.  *Barkwill v. Cornelia H. Barkwill Revocable Trust*, 902 N.E.2d 836, 839 (Ind. Ct. App.

5

2009), *trans. denied*. We will set aside findings only if they are clearly erroneous, that is, "when the record contains no facts or inferences supporting them." *Id.* To determine that a finding or a conclusion is clearly erroneous, an appellate court's review must leave it with the firm conviction that a mistake has been made. *Dinsmore v. Lake Elec. Co., Inc.*, 719 N.E.2d 1282, 1285 (Ind. Ct. App. 1999). We neither reweigh the evidence nor assess the credibility of witnesses, but consider only the evidence most favorable to the judgment. *Id.*

Because Revercomb is appealing from a negative judgment, he may only prevail if he can establish that "the judgment is contrary to law, that is, the evidence is without conflict and all reasonable inferences to be drawn from the evidence lead only to one conclusion but the trial court reached a different conclusion." *Ponziano Constr. Servs., Inc. v. Quadri Enters., LLC*, 980 N.E.2d 867, 874-75 (citing *Clark v. Hunter*, 861 N.E.2d 1201, 1206 (Ind. Ct. App. 2007)).

A guaranty is "'a promise to answer for the debt, default, or miscarriage of another person.'" *Grabill Cabinet Co., Inc. v. Sullivan*, 919 N.E.2d 1162, 1165 (Ind. Ct. App. 2010) (quoting *S-Mart, Inc. v. Sweetwater Coffee Co., Ltd.*, 744 N.E.2d 580, 585 (Ind. Ct. App. 2001), *trans. denied*). The interpretation of a guaranty agreement is governed by the same rules as the interpretation of other contracts. *TW Gen. Contracting Servs., Inc. v. First Framers Bank & Trust*, 904 N.E.2d 1285, 1288 (Ind. Ct. App. 2009) (citing *Kruse v. Nat'l Bank of Indianapolis*, 815 N.E.2d 137, 144 (Ind. Ct. App. 2004)). If the terms of a contract are "'clear and unambiguous, courts must give those terms their clear and ordinary meaning.'" *Everhart v. Founders Ins. Co.*, 993 N.E.2d 1170, 1174 (Ind. Ct. App. 2013)

6

(quoting *Dunn v. Meridian Mut. Ins. Co.*, 836 N.E.2d 249, 252 (Ind. 2005)). In doing so, we "interpret a contract so as to harmonize its provisions, rather than place them in conflict." *Everhart*, 993 N.E.2d at 1174. "'We will make all attempts to construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless.'" *Id.* (quoting *Rogers v. Lockard*, 767 N.E.2d 989, 992 (Ind. Ct. App. 2002)). Moreover, "[t]he terms of the guaranty should neither be so narrowly interpreted so as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms." *Kordick v. Merchs. Nat'l Bank & Trust Co. of Indianapolis*, 496 N.E.2d 119, 123 (Ind. Ct. App. 1986).

We must first look to the plain language of the contracts. Directly underneath where Revercomb signed each contract, the text stated "Authorized Signature Individually and for the Customer (Read paragraph 15F on the reverse hereof)." Ex. 1-5. Moreover, paragraph 15 on the opposite side of each contract stated:

> The signer agrees that he/she has the authority and is signing this agreement, (1) in his/her individual capacity, (2) as a representative of the Customer, (3) as a representative of the entity identified in the advertisement or for whose benefit the advertisement is being purchased (if the entity identified in the advertisement is not the same as the Customer or signer). By his/her execution of this agreement, the signer personally and individually undertakes and assumes, jointly and severally, with the Customer, the full performance of this agreement, including payment of the amounts due hereunder.

*Id.*

Revercomb argues that he only intended to sign the contracts as a corporate representative of R&G Construction and not personally. However, his contention ignores the plain language of the contracts. It is well established that "[t]he intent relevant in

7

contract matters is not the parties' subjective intents but their outward manifestation of it." *Zimmerman v. McColley*, 826 N.E.2d 71, 77 (Ind. Ct. App. 2005). "A court does not examine the hidden intentions secreted in the heart of a person; rather it should examine the final expression found in conduct." *Id.*

The trial court relied upon Revercomb's outward manifestation to be bound under each of these contracts. Both under the signature line and in paragraph 15 of each contract, the text stated that the signer was signing as both a representative of the Customer and in his or her individual capacity. At trial, the only evidence Revercomb presented that he was not personally bound under the contracts was that he signed two of the contracts as the president of the company and the others as owner of the company. Tr. p. 32. Therefore, the argument goes, he did not want to sign in an individual capacity. However, the plain language of the contract directly conflicts with this statement. Revercomb's argument is an attempt to reweigh the evidence, which we may not do. The trial court's determination that Revercomb signed both personally and as a corporate representative was not clearly erroneous based upon the unambiguous language of the contracts. Finally, Revercomb wants us to adopt a rule requiring two signatures to create a guaranty contract. We decline to do so when the language of the contract is unambiguous.

Affirmed.

RILEY, J., and MAY, J., concur.