## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Feb 25 2015, 9:55 am
*Kevin S. Smith*
CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Jane Dall Wilson
Andrew M. McCoy
Faegre Baker Daniels LLP
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Rachel Staggs, | February 25, 2015 |
| *Appellant-Defendant,* | Court of Appeals Case No. 47A01-1406-PL-254 |
| v. | Appeal from the Lawrence Circuit Court. |
| Corena Buxbaum, | The Honorable Andrea K. McCord, Judge. |
| *Appellee-Plaintiff* | Cause No. 47C01-0912-PL-1522 |

**Baker, Judge.**

[1] Rachel Staggs appeals the trial court's order ruling in favor of Corena Buxbaum's complaint against Staggs for fraudulent misrepresentation and awarding damages of $94,798.32. Staggs raises the following arguments: (1) there is insufficient evidence supporting the trial court's finding that Staggs's representations regarding the condition of her residence's septic system were fraudulent; (2) the trial court should reconsider its exemplary damages award in light of a recent Indiana Supreme Court opinion; and (3) the trial court erroneously calculated Buxbaum's damages. We affirm with respect to the finding of fraudulent misrepresentation and remand with instructions to reconsider and recalculate the damages award.

## Facts

[2] In 1998, Staggs married Dwight Staggs and moved into his residence (the Property). In 2005, Dwight passed away and Staggs became the sole owner of the Property.

[3] In 2008, Staggs decided to sell the Property. On the Seller's Residential Real Estate Sales Disclosure Form, Staggs indicated that the septic field/bed was not defective, that she did not know the condition of the septic and holding tank/septic mound, and that there were no moisture or water problems in the basement.

[4] Buxbaum was interested in purchasing the Property. She visited the house twice and did not notice any moisture problems in the basement. Buxbaum

hired an inspector, who identified a radon problem on the Property but did not identify any other problems.

[5] On August 27, 2008, Buxbaum purchased the Property from Staggs. Shortly thereafter, Buxbaum attempted to locate the septic system on the Property as she planned to build a garage and did not want to build above the septic tank. Eventually, Buxbaum learned that there was no septic system on the Property. Instead, sewage was expelled through a sewage pipe that traversed several hundred feet across the Property and terminated at the back of the Property.

[6] In November 2008, Buxbaum learned that there was a leak in the basement. An employee of the company Buxbaum hired to remedy the moisture problems stated that he believed the basement had been leaking for years, as he observed water stains and noticed that the floor had been pushed up because of hydrostatic pressure.

[7] On December 14, 2009, Buxbaum filed a complaint against Staggs, alleging a single count of fraudulent misrepresentation. A bench trial took place on May 12 and December 12, 2013. On the first day of the trial, Staggs was represented by attorney Philip Chamberlain. Between the first and second days of trial, Mr. Chamberlain's license to practice law was suspended, so Staggs appeared pro se at the second day of trial.

[8] Over the course of the trial, the following evidence was submitted to the trial court:

- Staggs's stepdaughter testified that she had grown up in the house on the Property. She knew that there was no septic system and stated that she was present for multiple conversations between her father and Staggs in which her father told Staggs that there was no septic system and that one would need to be installed before attempting to sell the Property.

- Staggs's stepdaughter also testified that the basement was wet all the time, that Staggs was aware of that fact, and that at one point in time, the family needed to rent a machine to pump water out of the basement.

- Staggs's stepson testified that he was also present for multiple conversations between his father and Staggs in which his father stated that the Property had no septic system. He also testified that he and Staggs had actually walked through the Property several times and seen the pipe out of which the sewage drained.

- Staggs's stepson also testified that the basement frequently had two to four inches of standing water and that Staggs had moved things out of the basement to avoid water damage.

- In 2007, Scott Nordhoff of Hydra Stone viewed the Property with potential interest of buying it. At that time, he spoke with Staggs about water problems in the basement and Staggs told him that it was a good thing that he was in the waterproofing business. Nordhoff did not buy the Property but did end up waterproofing the basement in 2009 when Buxbaum hired Hydra Stone to solve the problem. Nordhoff testified that he believed the basement had been leaking for years.

Buxbaum had to hire professionals to install a septic system, remedy the moisture issues in the basement, and waterproof the basement. The total cost to her of making these changes was $21,939.58.

[9] On March 4, 2014, the trial court ruled in favor of Buxbaum. Among other things, the trial court found as follows:

> 2. . . . [Staggs] had actual knowledge of the defects in both the basement and the septic system prior to filling out the

disclosure form and selling the home and made false statements of important past and existing facts regarding the basement and septic system.

3.  The court finds that it was *not* an error, inaccuracy or omission by [Staggs] that was not within her actual knowledge and would keep her from liability.

\*\*\*

Damages

\*\*\*

3.  . . . The court finds that there was the requisite specific intent to make a finding of fraud for the purposes of awarding treble damages. . . . The Court now awards [Buxbaum] her request for treble damages.

Appellant's App. p. 14-15 (emphasis original). The trial court calculated damages as follows: (1) out-of-pocket costs of $21,939.58; (2) treble damages of $65,818.74; and (3) attorney fees of $7,040. The trial court added all of those amounts for a total damages award of $94,798.32. Staggs filed a motion to correct errors, which the trial court denied. Staggs now appeals.

# Discussion and Decision

[10] Initially, we note that Buxbaum has not filed a brief in this appeal. When an appellee does not submit a brief, we do not undertake the burden of developing arguments for that party. *Thurman v. Thurman*, 777 N.E.2d 41, 42 (Ind. Ct. App. 2002). Instead, we apply a less stringent standard of review and may reverse if the appellant establishes prima facie error. *Id.*

# I. Fraudulent Misrepresentation Claim

[11] First, Staggs argues that the trial court erroneously found in favor of Buxbaum on her claim of fraudulent misrepresentation. In considering this claim, we will only set aside the trial court's judgment if it is clearly erroneous, which occurs only when there is no evidence supporting the factual findings or the findings fail to support the judgment. *Reum v. Mercer*, 817 N.E.2d 1267, 1271 (Ind. Ct. App. 2004). We will neither reweigh the evidence nor assess witness credibility in our review of the trial court's judgment, and will consider only the evidence supporting the judgment and the reasonable inferences that may be drawn therefrom. *Id.*

[12] To succeed in a claim for fraudulent misrepresentation, a claimant must prove the following by a preponderance of the evidence:

> "(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party['s] injury."

*Reed v. Reid*, 980 N.E.2d 277, 292 (Ind. 2012) (quoting *Rice v. Strunk*, 670 N.E.2d 1280, 1289 (Ind. 1996)). A seller of a home "may be held liable for fraudulent misrepresentations made on the Sales Disclosure Form if the buyer can prove the seller's actual knowledge of the defect at the time the form is completed." *Hizer v. Holt*, 937 N.E.2d 1, 7-8 (Ind. Ct. App. 2010).

[13] Staggs complains that much of the evidence supporting the trial court's judgment should not have been admitted for various reasons, including the

prohibition against hearsay testimony. Staggs acknowledges, however, that no objections to this evidence were raised at trial. Consequently, any argument related to the admission of this evidence has been waived for purposes of appeal.[1]

[14] As noted above, Staggs's stepdaughter and stepson both testified that she had actual knowledge of the lack of a septic system and of the frequent problem of water in the basement. And Nordhoff testified that in 2007, Staggs had made a comment to him implying that she was well aware of the problem with water in the basement. This evidence supports the trial court's judgment in favor of Buxbaum on her claim of fraudulent misrepresentation. Staggs's remaining arguments to the contrary amount to a request that we reweigh the evidence and assess witness credibility, which we decline to do. We find no error in the trial court's judgment in favor of Buxbaum.

## II. Damages Award

## A. Treble Damages

[15] Staggs next argues that the trial court should reconsider its award of treble damages in light of our Supreme Court's recent decision in *Wysocki v. Johnson*, 18 N.E.3d 600 (Ind. 2014), which was handed down after the trial court issued its order in this case. In reviewing a trial court's damages award, we will

---

[1] We express no opinion as to whether Staggs has a claim for legal malpractice against the attorney who represented her on the first day of the bench trial.

neither reweigh the evidence nor assess witness credibility, and will reverse only if it is not within the scope of the evidence before it. *Hooker v. Norbu*, 899 N.E.2d 655, 658 (Ind. Ct. App. 2008).

[16] In this case, the trial court awarded damages pursuant to the Crime Victim Relief Act (CVRA). Ind. Code § 34-24-3-1 *et seq*. Under the CVRA, a claimant may be entitled to treble damages under certain circumstances. In *Wysocki*, our Supreme Court clarified the circumstances that may lead to exemplary damages under the CVRA. While the trial court still retains the discretion to award exemplary damages, it must first determine the level of the defendant's culpability. The Court emphasized that "not every intentional tort is necessarily 'so heinous as to require exemplary damages,' or as to warrant quasi-criminal CVRA liability at all." *Id.* at 606 (quoting *Citizens Nat'l Bank of Evansville v. Johnson*, 637 N.E.2d 191, 195 (Ind. Ct. App. 1994)). Instead, such liability is "a matter of the factfinder's discretionary judgment of whether the defendant is *criminally* culpable." *Id.* (emphasis original). A plaintiff is not required to prove liability beyond a reasonable doubt, but the factfinder should make an "assessment of criminality" before imposing "quasi-criminal liability" for exemplary damages. *Id.* at 606.

[17] In this case, the trial court did not have the guidance of our Supreme Court when it made its ruling herein. Instead, it merely found that Buxbaum had proved "that there was the requisite specific intent to make a finding of fraud for the purposes of awarding treble damages." Appellant's App. p. 15. Given that an additional finding of criminal culpability is now required to support an

award of treble damages, we remand this cause to the trial court to reconsider its damages award in light of *Wysocki*.

## B. Calculation of Damages

[18] Finally, Staggs argues that the trial court erred in calculating damages. We agree. The trial court calculated Buxbaum's out-of-pocket damages as $21,939.58, tripled those damages for a total of $65,818.74, and then added those two figures (plus attorney fees) together. In effect, therefore, the trial court actually *quadrupled*, rather than tripled, Buxbaum's actual damages. This Court has made clear that it is inappropriate under the CVRA to award "compensatory damages . . . *plus* . . . treble damages[.]" *Storm Damages Specialists of Am. v. Johnson*, 984 N.E.2d 660, 666-67 (Ind. Ct. App. 2013) (emphasis original). Consequently, we remand to the trial court with instructions to recalculate Buxbaum's damages. If the trial court determines that Buxbaum is still entitled to treble damages in light of *Wysocki*, the maximum amount of damages to which she is entitled is $72,858.74 (three times the actual damages of $21,939.58 plus $7,040 in attorney fees).

The judgment of the trial court is affirmed in part and remanded for further proceedings consistent with this opinion.

Vaidik, C.J., and Riley, J., concur.